1   Esha Bandyopadhyay (Bar No. 212249)
    bande@perkinscoie.com
2   Perkins Coie LLP
    101 Jefferson Drive
3   Menlo Park, California 94025-1114
    Phone: (650) 838-4300
4   Fax: (650) 838-4350

5   Scott T. Wilsdon (*pro hac vice*)
    wilson@yarmuth.com
6   Jeremy E. Roller (*pro hac vice*)
    jroller@yarmuth.com
7   Yarmuth Wilsdon Calfo PLLC
    925 Fourth Avenue, Suite 2500
8   Seattle, Washington 98104
    Phone: (206) 516-3800
9   Fax: (206) 516-3888

10  Attorneys for Plaintiff
    MICROSOFT CORPORATION

11

12

13              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
14

15  MICROSOFT CORPORATION, a
    Washington corporation,                    No. 07-CV-01840-CW
16
                        Plaintiff,             PLAINTIFF MICROSOFT
17                                             CORPORATION'S NOTICE OF MOTION
            v.                                 AND MOTION FOR SUMMARY
18                                             JUDGMENT; MEMORANDUM OF
    INTRAX GROUP, INC., d/b/a, SURPLUS         POINTS AND AUTHORITIES IN
19  COMPUTERS, a California corporation;       SUPPORT THEREOF
    MICHAEL MAK, an individual; and JOHN
20  DOES 1-5,                                  **Date:**      August 14, 2008
                                               **Time**:      2:00 p.m.
21                      Defendants.            **Before:**    Hon. Claudia Wilken
                                               **Location:**  Courtroom 2, 4th Floor
22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION....................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.........................................1

I. INTRODUCTION...............................................................................................1

II. STATEMENT OF THE ISSUES ........................................................................2

III. FACTS.............................................................................................................3

    A.    Copyrighted Microsoft Software..........................................................3

    B.    Microsoft Student Media Software. ....................................................3

    C.    The Surplus Computers Defendants' Infringement Of Microsoft's Copyrights. ...........................................................................................4

        1.    Test Purchases And Warnings..................................................4

        2.    Defendants' Admitted Trafficking In Microsoft Student Media Software...................................................................................6

    D.    Mr. Mak's Personal Participation In Student Media Trafficking And Direction And Control Over Surplus Computers. ................................8

IV. ARGUMENT ...................................................................................................9

    A.    Standard. ..............................................................................................9

    B.    Microsoft Is Entitled To Judgment As A Matter Of Law. .................9

        1.    Unauthorized Distribution Of Microsoft Student Media Software.................................................................................11

        2.    Violation Of 17 U.S.C. § 602(a)..........................................13

    C.    Mr. Mak Is Individually Liable. .......................................................16

        1.    Mr. Mak Is Directly Liable...................................................16

        2.    Mr. Mak Is Contributorily And Vicariously Liable. ............17

    D.    Microsoft Is Entitled To A Permanent Injunction. ...........................18

V. CONCLUSION ................................................................................................19

1

## **TABLE OF AUTHORITIES**

2

3

### **Federal Cases**

4

*Adobe Sys., Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086 (N.D. Cal. 2000)...................12
*American Int'l Pictures, Inc. v. Foreman*, 576 F.2d 661 (5th Cir. 1978) ................................12
5
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986)....................................9
*Arista Records LLC v. Ibanez*, 2008 WL 65397 at *2 (S.D. Cal. Jan. 4, 2008)......................18
6
*BMG Music v. Perez*, 952 F.2d 318 (9th Cir. 1991)...........................................................14, 15
*Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 51 S. Ct. 410, 75 L.Ed. 971 (1931) ..........10
7
*Columbia Broadcasting System, Inc. v. Scorpio Music Distribs., Inc.*, 569 F. Supp. 47
    (E.D. Pa. 1983), *aff'd without opinion*, 738 F.2d 424 (3d Cir. 1984)...........................14, 15
8
*Columbia Pictures Indus., Inc. v. T & F Enters. Inc.*, 68 F. Supp. 2d 833
    (E.D. Mich. 1999)..................................................................................................................19
9
*Educational Testing Service v. Simon*, 95 F. Supp. 2d 1081 (C.D. Cal. 1999)........................11
*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211
10
    (9th Cir. 1997) .......................................................................................................................10
*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ....................................10
11
*Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110 (2d Cir. 1986)...............10
*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) ................................17, 18
12
*Foreverendeavor Music, Inc. v. S.M.B., Inc.*, 701 F. Supp. 791 (W.D. Wash. 1988)..............16
*ICG-Internet Commerce Group, Inc. v. Wolf*, 519 F. Supp. 2d 1014 (D. Ariz. 2007)..............10
13
*MapInfo Corp. v. Spatial Re-Engineering Consultants*, 2004 WL 26350, at *3
    (N.D.N.Y. 2004)....................................................................................................................13
14
*MGM Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966 (C.D. Cal. 2006) .....................9, 15
*Microsoft Corp. v. Compusource Distrib., Inc.*, 115 F. Supp. 2d 800 (E.D. Mich. 2000) .........9
15
*Microsoft Corp. v. E & M Internet Bookstore, Inc.*, 2008 WL 191346 at *2
    (N.D. Cal. Jan. 22, 2008).........................................................................................................9
16
*Microsoft Corp. v. EEE Business Inc., et al.*, No. C 07-01839 JSW (N.D. Cal.).....................10
*Microsoft Corp. v. Global Online Distribution, LLC, et al.*, No. 2:07-cv-420 (D. Nev.) ........10
17
*Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077 (D. Md. 1995) ...............................9, 11
*Microsoft Corp. v. Harmony Comps. & Elecs.*, 846 F. Supp. 208 (E.D.N.Y. 1994) .........12, 13
18
*Microsoft Corp. v. Logical Choice Computers*, 2001 WL 58950 at *8
    (N.D. Ill. June 22, 2001)..........................................................................................................9
19
*Microsoft Corp. v. Sellers*, 411 F. Supp. 2d 913 (E.D. Tenn. 2006)........................................9
*Microsoft Corp. v. Technology Enterprises, LLC, et al.*, No. 06-CIV-22880-
20
    HOEVERLER/BROWN (S.D. Fla.) .....................................................................................10
*Novell, Inc. v. Unicom Sales, Inc.*, 2004 WL 1839117, at *13 (N.D. Cal. 2004) ..............12, 13
21
*Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345 (8th Cir. 1994) .........................................18
*Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477 (9th Cir. 1994) ......................14
22
*Playboy Enters., Inc. v. Starware Publ'g Corp.*, 900 F. Supp. 438 (S.D. Fla. 1995) .............16
*Quality King Distribs., Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135 (1998)...............14, 15
23
*Sailor Music v. Mai Kai of Concord, Inc.*, 640 F. Supp. 629 (D.N.H. 1986)..........................16
*Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245, (S.D. Fla. 2006) ............................14, 15
24
*UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*, 446 F. Supp. 2d 1164
    (E.D. Cal. 2006).....................................................................................................................11
25
*UMG Recordings, Inc. v. Norwalk Distribs., Inc.*, 2003 WL 22722410, at *3-*4
    (C.D. Cal. 2003) ....................................................................................................................15
26
*Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.2d 769 (9th Cir. 2006)..........................13
*Walt Disney Co. v. Powell*, 897 F.2d 565 (D.C. Cir. 1990) ....................................................18

27

28

## **Federal Statutes**

17 U.S.C. § 106(3) ...................................................................................... 9, 11, 12

17 U.S.C. § 109 ................................................................................................... 13

17 U.S.C. § 109(a) .............................................................................................. 15

17 U.S.C. § 501 ...................................................................................... 1, 10, 19

17 U.S.C. § 501(a) ....................................................................................... 10, 11

17 U.S.C. § 504(c)(2) ......................................................................................... 10

17 U.S.C. 602(a) ........................................................................................ passim

## **Federal Rules**

Federal Rule of Civil Procedure 56 .............................................................. 1, 9

## **Other Authorities**

Nimmer on Copyright § 8.12[B][6] (2006) ..................................................... 15

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 56 and Civil Local Rules 7-2 and 56-1, plaintiff Microsoft Corporation ("Microsoft") will move, and hereby does move, for summary judgment against defendant Michael Mak as to liability on Claims I and II of Microsoft's Complaint in this action (Dkt. # 1). This motion shall be heard on Thursday, August 14, 2008 at 2:00 p.m., before the Honorable Claudia Wilken, in Courtroom 2, 4th Floor, at the United States Courthouse, 1301 Clay Street, Oakland, California.

This motion is brought on the grounds that there is no controversy as to any material fact necessary to prove Michael Mak's liability as to Claims I and II. This motion is based on the supporting Memorandum of Points and Authorities below; the accompanying declarations of Miles Hawkes, Deborah M. Johnson, and Enoch Remick; the June 25, 2008 deposition of Michael Mak and exhibits thereto; the pleadings and documents on file with the Court; any oral argument requested by the Court; and such other matters as to which the Court may take judicial notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 56, Microsoft seeks summary judgment as to Michael Mak's liability for copyright infringement, 17 U.S.C. § 501, and unauthorized importation of copyrighted works, 17 U.S.C. § 602(a). Microsoft brings this motion on the grounds that there is no genuine issue as to any material fact necessary to prove Michael Mak's liability.

## I. INTRODUCTION

Defendant Michael Mak ("Mr. Mak") and his company, Intrax Group, Inc. (d/b/a Surplus Computers) ("Intrax" or "Surplus Computers") (Mak and Intrax collectively are referred to as the "Surplus Computers Defendants") are repeat, high-volume, willful infringers of Microsoft's copyrights. Even after being warned by Microsoft to cease and desist their infringing activities, the Surplus Computers Defendants infringed Microsoft's exclusive right

of distribution by selling special Microsoft Student Media software that is licensed for exclusive use by qualified educational users. The Surplus Computers Defendants have also violated Microsoft's right to control importation of its copyrighted works manufactured abroad for exclusive distribution and use abroad, in violation of 17 U.S.C. 602(a), by distributing that software in the United States.

By this motion Microsoft seeks summary judgment as to liability on its first and second claims against Mr. Mak.[1]

## II. STATEMENT OF THE ISSUES

**A.** Whether Microsoft is entitled to summary judgment as to liability against Mr. Mak for copyright infringement where there is no genuine issue of material fact as to Mr. Mak's distribution of infringing Microsoft Windows XP, Office 2003, and Office XP Student Media software (in addition Student Media for other copyrighted Microsoft works), to which Microsoft has exclusive copyright ownership and right of distribution, to individuals and entities not qualified to use the software, without approval or authorization from Microsoft.

**B.** Whether Microsoft is entitled to summary judgment as to liability against Mr. Mak for infringing importation of copyrighted works where there is no genuine issue of material fact as to Mr. Mak's distribution within the United States of infringing Microsoft Windows XP, Office 2003, and Office XP Student Media software (in addition to Student Media for other copyrighted Microsoft works) that was manufactured and licensed for exclusive distribution and use outside of the United States, without approval or authorization from Microsoft.

---

[1] In September of 2007, Intrax filed a Chapter 11 Bankruptcy Petition. Declaration of Deborah M. Johnson ("Johnson Decl.") ¶ 4. Intrax's bankruptcy proceedings remain pending and, because the automatic bankruptcy stay applies to Intrax in this matter, Microsoft is *not* seeking summary judgment against Intrax by this motion.

MICROSOFTS NOTICE AND MOTION FOR SUMMARY
JUDGMENT; MEMO. OF POINTS AND AUTHORITIES
NO. 07-CV-01840 - 2

### III. FACTS

**A.    Copyrighted Microsoft Software.**

Microsoft develops, markets, distributes, and licenses computer software programs, including such programs as Microsoft Windows XP, Microsoft Office 2003, and Microsoft Office XP (among other programs) that are the subject of this action for copyright infringement. *See* Declaration of Miles Hawkes ("Hawkes Decl.") ¶ 15; Complaint ¶¶ 14-15. Microsoft's software products are packaged and distributed with associated proprietary materials such as user's guides and manuals, end-user license agreements, Certificates of Authenticity ("COAs"), and other components. Microsoft holds valid copyrights in its software programs, including Microsoft Windows XP, Microsoft Office 2003, Microsoft Office XP, and other software described in this motion, which are duly and properly registered with the United States Copyright Office. Hawkes Decl. ¶ 15.

**B.    Microsoft Student Media Software.**

Microsoft offers Student Media software through special academic licensing programs at prices roughly equivalent to Microsoft's manufacturing and transportation costs, which amounts to a discount in excess of 90% off the regular retail price. Declaration of Enoch Remick ("Remick Decl.") ¶ 5. Student Media was created to provide low cost software to qualified educational institutions for use by their students, faculty, and staff. *Id*. Microsoft distributes Student Media software at a steep discount to provide students in the United States, in developing nations, and worldwide low cost access to the latest software technology and information in furtherance of the students' educational development. *Id*.

Pursuant to the terms of Microsoft's licensing agreements and policies, Microsoft Student Media is subject to significant restrictions regarding use and distribution. *Id*. The Student Media program is intended only for qualified educational users, and the license agreements under which such software media is distributed restrict its distribution to those qualified educational users. *Id*. Additionally, in the United States Student Media may be distributed only by Authorized Education Resellers ("AERs"), who are permitted to distribute

Student Media software only to qualified educational users. *Id.* ¶ 6. Academic institutions and students are prohibited from redistributing Student Media software because the programs through which Student Media is distributed are intentionally designed to provide low cost software to qualified educational users, and not the general public. *Id.* Microsoft Student Media is marked clearly with the following copyright warning:

> All use subject to volume license agreement. Do not make illegal copies of this disc. **Not for retail or OEM Distribution. Not for resale.**

*Id.* ¶ 9 & Ex. 1 (emphasis in original).

As part of Microsoft's international licensing and distribution programs, Microsoft also imposes geographic restrictions on the distribution of Microsoft products, including Student Media software. *Id.* ¶ 7. For example, Student Media software distributed to Europe, the Middle East, or Africa, is not licensed for distribution or use in North America. *Id.*

A search of Microsoft's database listing all AERs indicated that none of the Surplus Computers Defendants is an AER, or otherwise authorized to distribute Student Media in the United States. *Id.* ¶ 10. Moreover, none of the Surplus Computers Defendants' known suppliers of Microsoft Student Media is an AER. *Id.* Similarly, none of the Surplus Computers Defendants or their suppliers is authorized by Microsoft to import to the United States Microsoft software licensed for distribution outside the United States. *Id.*

**C.     The Surplus Computers Defendants' Infringement Of Microsoft's Copyrights.**

The record here reflects the Surplus Computers Defendants' – and Mr. Mak's own – repeated infringement of and disregard for Microsoft's rights under the Copyright Act, even after being warned by Microsoft to cease and desist the infringing conduct.

**1.     Test Purchases And Warnings.**

Microsoft makes controlled test purchases of suspect software products. Hawkes Decl. ¶ 5. The acquired evidence is formally analyzed by Microsoft product identification experts to determine if the software and components are genuine, counterfeit, or otherwise infringing upon Microsoft's intellectual property rights. *Id.*

On April 10, 2006, an investigator ordered one unit of Microsoft Office 2003 from the Surplus Computers Defendants through their website www.surpluscomputers.com.  *Id.* ¶ 8. The software (CD-ROM) was received on April 14, 2006, and was subsequently analyzed by a Microsoft software identification specialist who determined that it was infringing Microsoft Student Media software.  *Id.*  It was further determined to have been manufactured in Ireland, and not licensed for distribution or use in the United States.  *Id.*

On September 26, 2006, an investigator ordered one unit of Microsoft Windows XP and one unit of Office 2003 from the Surplus Computers Defendants through their website www.surpluscomputers.com  *Id.* ¶ 9.  The software (CD-ROM) was received on October 2, 2006, and was subsequently analyzed by a Microsoft software identification specialist who determined that it was infringing Microsoft Student Media software.  *Id.*  It was further determined to have been manufactured in Ireland and not licensed for distribution or use in the United States.  *Id.*

On November 3, 2006, an investigator ordered one unit of Microsoft Windows XP from the Surplus Computers Defendants through their website www.surpluscomputers.com. *Id.* ¶ 10.  The software (CD-ROM) was received on November 13, 2006, and was subsequently analyzed by a Microsoft software identification specialist who determined that it was infringing Microsoft Student Media software.  *Id.*  It was further determined to have been manufactured in Ireland or Germany and not licensed for distribution or use in the United States.  *Id.*

On January 3, 2007, Microsoft notified the Surplus Computers Defendants by letter that Microsoft had analyzed software distributed by them and had identified it as infringing Student Media.[2]  *Id.* ¶ 11 & Ex. 4.  The letter demanded that the Surplus Computers Defendants immediately cease and desist all infringing activity and warned that Microsoft

---

[2] The January 3, 2007 cease and desist letter was not the first time the Surplus Computers Defendants were warned by Microsoft to stop their infringing distribution of Microsoft products.  The Surplus Computer Defendants received no fewer than *four* prior cease and desist letters, addressed to the Intrax Group Inc. or "Software & Stuff," a "d/b/a" used by the Intrax Group prior to its use of "Surplus Computers."  Hawkes Decl. ¶ 14 & Exs. 7-10; Declaration of Deborah M. Johnson ("Johnson Decl.") Ex. 1 (Mak Dep. Tr.) at 44:16-22.

reserved "the right to seek all available legal remedies without further notice." *Id.* ¶ 11 & Ex. 4.

Despite receiving Microsoft's warning letter, the Surplus Computers Defendants continued to infringe Microsoft's copyright by distributing Student Media software manufactured and licensed for exclusive distribution to and use by educational users abroad. On January 11, 2007, an investigator ordered one unit of Windows XP and one unit of Office 2003 from the Surplus Computers Defendants through their website www.surpluscomputers.com. *Id.* ¶ 12. The software (CD-ROMs) was received on January 16, 2007, and was subsequently analyzed by a Microsoft software identification specialist who determined that it was infringing Microsoft Student Media software. *Id.* It was further determined to have been manufactured in Ireland and not licensed for distribution or use in the United States. *Id.*

On March 6, 2007, an investigator ordered three units of Office 2003 from the Surplus Computers Defendants through their website www.surpluscomputers.com. *Id.* ¶ 13. The software (CD-ROMs) was received on March 12, 2007, and was subsequently analyzed by a Microsoft software identification specialist who determined that it was infringing Microsoft Student Media software. *Id.* It was further determined to have been manufactured in Ireland and not licensed for distribution or use in the United States. *Id.*

**2.    Defendants' Admitted Trafficking In Microsoft Student Media Software.**

At a deposition on June 25, 2008, Mr. Mak, Surplus Computers' President, majority owner, and board member, admitted that the Surplus Computers Defendants bought and sold Microsoft Windows XP, Office 2003, Office XP, Server 2003, and Visio Student Media software.[3] Declaration of Deborah M. Johnson ("Johnson Decl.") Ex. 1 (June 25, 2008 Michael Mak Deposition Transcript) (hereinafter "Mak Dep. Tr.") at 111:12-21; 130:1-3.

---

[3] Microsoft Office 2003 and Office XP include a number of additional copyrighted Microsoft software programs, including Access 2003, Excel 2003, Outlook 2003, Business Contact Manager for Microsoft Office Outlook 2003, PowerPoint 2003, Word 2003, InfoPath 2003, Access 2002, Excel 2002, Outlook 2002, PowerPoint 2002, Word 2002, and FrontPage 2002. Hawkes Decl. ¶ 15.

Indeed, based upon records produced by the Intrax Group in a parallel bankruptcy proceeding,[4] Mr. Mak admitted that the Surplus Computers Defendants trafficked in **at least 2,895 units of Microsoft Student Media software**.[5]  Additionally, Mr. Mak admitted that the Surplus Computers Defendants trafficked in **at least an additional 1,754 units of Microsoft software** that was "NFR" (not for resale) software, and may have been Student Media.[6]  Mr. Mak admitted that "the majority" of Microsoft "NFR" software sold by the Surplus Computers Defendants was Student Media.  Mak Dep. Tr. at 131:20-22.  By Mr. Mak's own admission, the Surplus Computers Defendants "sold Student Media."  *Id.* at 48:20-22; *see also id.* at 51:2-11; 111:22-112:2.

At the time he and his company trafficked in and distributed Microsoft Student Media software, Mr. Mak was aware of the following language on the face of each Student Media CD-ROM the Surplus Computers Defendants distributed:

> All use subject to volume license agreement.  Do not make illegal copies of this disc.  **Not for retail or OEM Distribution.  Not for resale.**

*Id.* at 98:7-16.  Despite that language, the Surplus Computers never did *anything* to confirm that their customers were licensed to use Student Media software.  *Id.* at 96:12-18.  Nor did

---

[4] The bankruptcy court presiding over Intrax's bankruptcy proceedings has ordered Intrax to produce to Microsoft certain records relating to its distribution of Microsoft products.  *See* Johnson Decl. Ex. 2.  Intrax has not yet fully complied with that order, despite the fact that the deadline to produce the records passed months ago.  *See* Johnson Decl. ¶ 4 & Exs. 2-4.  Microsoft reserves its right to supplement the record if that forthcoming discovery reveals additional incidents of Mr. Mak's infringement of Microsoft's rights under the Copyright Act.

[5] These include 396 units of Office 2003, *see* Mak Dep. Tr. at 126:17-23 & Ex. 4 at 346-47, 30 units of Office XP, *see* Mak Dep. Tr. at 130:1-3 & Ex. 4 at 346-47, 148 units of Office 2003, *see* Mak Dep. Tr. at 133:19-24 & Ex. 4 at 345, 164 units of Office 2003, *see* Mak Dep. Tr. at 134:25-135:1 & Ex. 4 at 350, 110 units of Office 2003, *see* Mak Dep. Tr. at 135:8-10 & Ex. 4 at 351, 400 units of Office 2003, *see* Mak Dep. Tr. Ex. 4 at 352, 300 units of Office 2003, *see* Mak Dep. Tr. at 139:10-12 & Ex. 4 at 354, 297 units of Office 2003, *see* Mak Dep. Tr. at 139:13-15 & Ex. 4 at 355, 200 units of Office 2003, *see* Mak Dep. Tr. at 142:4-7 & Ex. 4 at 357, 100 units of Office 2003, *see* Mak Dep. Tr. at 142:14-17 & Ex. 4 at 359, 100 units of Office 2003, *see* Mak Dep. Tr. at 146:3-19 & Ex. 4 at 501, 300 units of Office 2003, *see* Mak Dep. Tr. at 147:13-17 & Ex. 4 at 618, and 350 units of Office 2003, *see* Mak Dep. Tr. at 147:18-22 & Ex. 4 at 621.

[6] These include 17 units of Server 2003, *see* Mak Dep. Tr. at 136:11-14 & Ex. 4 at 352-53, 40 units of Office XP, *see* Mak Dep. Tr. at 141:16-24 & Ex. 4 at 356, 500 units of Office XP, *see* Mak Dep. Tr. at 143:1-20 & Ex. 4 at 362-63, 600 units of Office XP, *see* Mak Dep. Tr. Ex. 4 at 365, 60 units of Office XP, *see* Mak Dep. Tr. at 145:19-21 & Ex. 4 at 500, 40 units of Office XP, *see* Mak Dep. Tr. Ex. 4 at 501, 30 units of Office XP, *see* Mak Dep. Tr. at 146:21-147:2 & Ex. 4 at 503, and 467 units of Office XP, *see* Mak Dep. Tr. Ex. 4 at 620.

the Surplus Computers Defendants ever provide their customers with copies of the Volume License Agreement referenced on the face of each Student Media CD-ROM. *Id.* at 97:18-20 & Ex. 2.

**D.    Mr. Mak's Personal Participation In Student Media Trafficking And Direction And Control Over Surplus Computers.**

Mr. Mak both personally participated in the acquisition and distribution of infringing Microsoft Student Media software *and* directed and controlled *every aspect* of Surplus Computers' acquisition and distribution of that infringing software.

Mr. Mak personally orchestrated Surplus Computers' acquisition of Microsoft Student Media software. Mak Dep. Tr. at 100:8-10, 118:15-17. Numerous of the Surplus Computers purchase orders for Microsoft Student Media or "NFR" software indicate that "MM" ordered the software, which Mr. Mak testified refers to him as the purchaser. *Id.* at 131:23-132:6, 138:23-139:3. Indeed Mr. Mak admits that he personally signed many purchase orders for Microsoft software, including Student Media software. *See* Mak Dep. Tr. at 134:19-22 & Ex. 4 at 349, Mak Dep. Tr. at 138:18-20 & Ex. 4 at 353, Mak Dep. Tr. at 142:11-13 & Ex. 4 at 358, Mak Dep. Tr. at 143:23-24 & Ex. 4 at 363, Mak Dep. Tr. at 147:10-12 & Ex. 4 at 619; Mak Dep. Tr. at 150:6-8 & Ex. 4 at 175, Mak Dep. Tr.at 155:16-19 & Ex. 4 at 211, Mak Dep. Tr. at 155:20-22 & Ex. 4 at 227, Mak Dep. Tr. at 155:23-156:1 & Ex. 4 at 139. His signature appears on nearly 150 additional purchase orders for Microsoft products. Johnson Decl. ¶ 3.

Mr. Mak also directed every aspect of Surplus Computers. In 1997 Mak started his "own company," the Intrax Group, Inc., which now does business as Surplus Computers. Mak Dep. Tr. at 36:5-9. Mr. Mak owns 70% of Intrax (the remaining 30% is owned by his brother). *Id.* at 58:7-9. Mr. Mak is the President of Intrax and one of two board members of the company (the other is his brother). *Id.* at 60:1-5, 60:25-61:2. Mr. Mak controlled the activities of every single Intrax employee he identified. *Id.* at 63:13-21, 66:4-7, 67:16-18, 69:5-9, 71:21-25, 73:12-16, 74:12-16, 77:17-19, 78:20-24, 80:2-4, 82:5-9. Mr. Mak had the ability to control and has maintained Surplus Computers' website,

www.surpluscomputers.com. *Id.* at 82:1-11, 84:25-85:5. Indeed, Mr. Mak directed that Microsoft software, including the Student Media software at issue in this case, be offered for sale on the Surplus Computers website. *Id.* at 85:6-22.

As President, Director, and majority owner of the Intrax Group, Mak's financial well being is linked directly to Intrax. Mr. Mak testified that if the company made more money, he would make more money. *Id.* at 157:2-5. His earnings are tied to Intrax's earnings. *Id.* at 158:21-24. Indeed, Mak has been paid bonuses by Intrax – bonuses that are distributed at the sole discretion of the Board of Directors, which consists of him and his brother. *Id.* at 158:25-159:7, 159:14-16.

## IV. ARGUMENT

### A.    Standard.

Summary judgment is appropriate where, as here, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986); *MGM Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 983 (C.D. Cal. 2006). Cases such as this one, where there is no real dispute that defendant engaged in infringing activity, are particularly well suited for summary judgment. *See, e.g.*, *Microsoft Corp. v. E & M Internet Bookstore, Inc.*, 2008 WL 191346 at *2 (N.D. Cal. Jan. 22, 2008); *Microsoft Corp. v. Sellers*, 411 F. Supp. 2d 913, 918 (E.D. Tenn. 2006); *Microsoft Corp. v. Logical Choice Computers*, 2001 WL 58950 at *8 (N.D. Ill. June 22, 2001); *Microsoft Corp. v. Compusource Distrib., Inc.*, 115 F. Supp. 2d 800, 805 (E.D. Mich. 2000); *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1084 (D. Md. 1995).

### B.    Microsoft Is Entitled To Judgment As A Matter Of Law.

The Copyright Act provides the copyright owner with a number of rights, including the exclusive right of distribution. *See* 17 U.S.C. § 106(3). Additionally, the Copyright Act provides that it is an unlawful infringement of a copyright owner's rights to import into the

1  United States copyrighted works acquired abroad without the copyright owner's authority.

2  *See* 17 U.S.C. § 602(a).[7]

3        To establish its claim for copyright infringement, Microsoft need only show (1) that it

4  owns valid copyrights in the works at issue, and (2) that Mr. Mak encroached upon

5  Microsoft's exclusive rights under the Copyright Act.  *See* 17 U.S.C. § 501; *Feist*

6  *Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Entertainment Research*

7  *Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).  Mr. Mak's

8  knowledge or intent is irrelevant to his liability for copyright infringement.[8]  *See* 17 U.S.C.

9  § 501(a); *Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 198-99, 51 S. Ct. 410, 412, 75

10  L.Ed. 971 (1931); *see also Fitzgerald Publishing C*o. v. *Baylor Publishing Co*., 807 F.2d

11  1110, 1113 (2d Cir. 1986) ("Even an innocent infringer is liable for infringement."); *ICG-*

12  *Internet Commerce Group, Inc. v. Wolf*, 519 F. Supp. 2d 1014, 1019 (D. Ariz. 2007) ("In

13  actions for [17 U.S.C. § 501] copyright infringement . . . the innocent intent of the Defendant

---

14

15  [7] Federal district courts have found that Microsoft is entitled to summary judgment or a preliminary injunction in
   similar factual circumstances.  For example, in *Microsoft v. EEE Business Inc, et al.*, No. C 07-01839 JSW (N.D.

16  Cal.), the Honorable Jeffrey White, United States District Court Judge, awarded Microsoft summary judgment
   on its copyright infringement and infringing importation of copyrighted works claims.  *See* Johnson Decl. Ex. 5.

17  In that case, the defendant admitted (by failure to answer requests for admissions) that she had distributed the
   software Microsoft acquired by test purchase (just as the evidence here conclusively demonstrates).  The court

18  found that "[t]his distribution of [Student Media] software without authorization plainly violates Microsoft's
   exclusive right to distribution under 17 U.S.C. § 501."  *Id.* Ex. 5 at 9.  The court further found that "Defendants'

19  importation to the United States of software manufactured and licensed for exclusive use abroad is a plain
   violation of 17 U.S.C. § 602(a)."  *Id.*

20
         Similarly, in *Microsoft Corp. v. Global Online Distribution, LLC, et al.*, No. 2:07-cv-420 (D. Nev.), the

21  Honorable Robert C. Jones, United States District Court Judge, denied Defendants' motion for summary
   judgment on Microsoft's copyright infringement and infringing importation claims (Dkt. # 68) and granted, on

22  grounds of 17 U.S.C. § 602(a), Microsoft's motion for summary judgment as to defendants' liability (Dkt. # 71).
   *See* Johnson Decl. Ex. 6 (the Court's ruling is reflected in the Minutes of Proceedings; the Court is presently

23  considering the form of the order to be entered).

24        Finally, in *Microsoft Corp. v. Technology Enterprises, LLC, et al.*, No. 06-CIV-22880-
   HOEVELER/BROWN (S.D. Fla.), the Honorable William M. Hoeveler, United States District Court Judge,

25  granted Microsoft's motion for preliminary injunction enjoining the defendants from distributing Microsoft
   Student Media software and from importing Microsoft software manufactured abroad for exclusive distribution

26  outside the United States.  *See* Johnson Decl. Ex. 7.

27  [8] A court may, however, consider a party's state of mind in determining whether to enhance statutory damages or
   to award attorney's fees.  *See* 17 U.S.C. § 504(c)(2).  At trial or on subsequent motion, Microsoft will offer

28  significant evidence that statutory damages, should Microsoft elect them, should be enhanced and that Microsoft
   is entitled to attorney's fees.

is not a defense to a finding of liability."); *UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*, 446 F. Supp. 2d 1164, 1172 (E.D. Cal. 2006) (copyright infringement does not require proof of a defendant's intent to infringe); *Educational Testing Service v. Simon*, 95 F. Supp. 2d 1081, 1087 (C.D. Cal. 1999) (copyright infringement "is a strict liability tort"); *see also Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1083 (D. Md. 1995) (neither lack of knowledge nor lack of intent are defenses to a claim of copyright infringement).

Microsoft unquestionably owns valid copyrights of the works at issue. Hawkes Decl. ¶ 15. As set forth below, Mr. Mak violated Microsoft's rights under the Copyright Act by distributing Microsoft Student Media software to persons or entities other than qualified educational users in violation of Microsoft's exclusive right of distribution under the Copyright Act. Mr. Mak is also liable for unauthorized importation of copyrighted works in violation of 17 U.S.C. § 602(a) for his distribution of Microsoft software manufactured abroad that is licensed for exclusive distribution to and use by qualified educational users abroad.

### 1.    Unauthorized Distribution Of Microsoft Student Media Software.

The Surplus Computers Defendants' distribution of Microsoft Student Media software to other than qualified educational users violates Microsoft's exclusive right of distribution under the Copyright Act. *See* 17 U.S.C. §§ 106(3), 501(a). Test purchases reveal the Surplus Computers Defendants' repeated distribution of Microsoft Student Media software – even after they were warned to cease such infringing conduct. Hawkes Decl. ¶¶ 8-13. Mr. Mak admitted that the Surplus Computers Defendants trafficked in **at least 2,895 units of Microsoft Student Media software**.[9] Additionally, Mr. Mak admitted that the Surplus Computers Defendants trafficked in **at least an additional 1,754 units of Microsoft software** that was "NFR" (not for resale) software, and may have been Student Media.[10] "The majority" of Microsoft "NFR" software sold by the Surplus Computers Defendants was

---

[9] *See supra* note 5.

[10] *See supra* note 6.

Student Media. Mak Dep. Tr. at 131:20-22. By Mr. Mak's own admission, the Surplus Computers Defendants "sold Student Media." *Id.* at 48:20-22; *see also id.* at 51:2-11; 111:22-112:2.

This Student Media software was plainly marked as not for resale. Remick Decl. ¶ 9 & Ex. 1; Mak Dep. Tr. Ex. 2 The Surplus Computers Defendants did nothing to qualify customers as licensed to use the Student Media software, nor did they provide their customers with copies of the Volume License Agreement that governed distribution and use of the software. Mak Dep. Tr. at 96:12-18; 97:18-20 & Ex. 2. The Surplus Computers Defendants distributed this special Student Media software without authorization from Microsoft, and without qualifying end users consistent with the academic volume licensing programs under which Student Media is distributed. Remick Decl. ¶ 10. The Surplus Computers Defendants simply do not have the right to sell Microsoft software because they cannot obtain rights beyond those granted in the license:

> "[E]ven an unwitting purchaser who buys a copy in the secondary market can be held liable for infringement if the copy was not the subject of a first sale by the copyright holder." *See American Int'l Pictures, Inc. v. Foreman*, 576 F.2d 661, 664 (5th Cir. 1978). "Thus unless title to the copy passes through a first sale by the copyright holder, subsequent sales do not confer good title." *Id.*

*Novell, Inc. v. Unicom Sales, Inc.*, 2004 WL 1839117, at *13 (N.D. Cal. 2004); *see also Microsoft Corp. v. Harmony Comps. & Elecs.*, 846 F. Supp. 208, 212 (E.D.N.Y. 1994) (same).

Should Mr. Mak assert a First Sale Defense to Microsoft's copyright infringement claim here, that defense will fail because the Microsoft software at issue is distributed by license, not sale. Remick Decl. ¶¶ 5-9; *see also Adobe Sys., Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1089 (N.D. Cal. 2000) (First Sale Defense applies only when there has been "an actual sale"); *Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.2d 769, 785 n.9 (9th

Cir. 2006) ("[T]he first sale doctrine rarely applies in the software world because software is rarely 'sold.'").[11]

Mr. Mak's business model was to (1) obtain Microsoft Student Media software manufactured outside the United States and intended for (and exclusively licensed for) distribution to schools in developing countries at a fraction of the cost of a retail version of the same software, and (2) sell the Student Media software at a profit to other individuals and entities, irrespective of the terms of the applicable academic licenses. Indeed, this is demonstrated by the Surplus Computers Defendants' offer of Microsoft Windows XP Professional x64 edition for $27.99, which they advertised at a massive discount off what they represented as the regular price of $299.99. *See* Mak Dep. Tr. 93:1-22 & Ex. 3 at 13.

### 2. Violation Of 17 U.S.C. § 602(a).

The Surplus Computers Defendants' distribution of Microsoft software manufactured and licensed for distribution abroad violates Microsoft's rights under the Copyright Act to control importation of copyrighted works manufactured and intended for use abroad. *See* 17 U.S.C. § 602(a) ("Importation into the United States, without the authority of the owner of copyright under this title, of copies or phonorecords of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies or phonorecords under section 106, actionable under section 501."). All of the Student Media software obtained through test purchases was manufactured by a third party in Ireland or Germany and licensed for use by students abroad – *not* for students in North America. Hawkes Decl. ¶¶ 8-10, 12-13; Remick Decl. ¶¶ 7-8. The Surplus Computers Defendants were not authorized by Microsoft to import or distribute in the United States Microsoft software licensed only for distribution outside the United States. Remick Decl. ¶¶ 10-11.

---

[11] Even without this evidence that Microsoft's software is licensed and not sold, Mr. Mak would bear the burden of proving an "actual sale" and other requirements of that defense. *Microsoft Corp. v. Harmony Computers & Elecs., Inc.*, 846 F. Supp. 208, 212 (E.D.N.Y. 1994); *MapInfo Corp. v. Spatial Re-Engineering Consultants*, 2004 WL 26350, at *3 (N.D.N.Y. 2004); *see also Novell, Inc. v. Unicom Sales, Inc.*, 2004 WL 1839117, at *8 (N.D. Cal. 2004) ("Because the defendant 'clearly has the particular knowledge of how possession of the particular copy was acquired,' the defendant has the burden of proving the applicability of the first sale doctrine.") (quoting 17 U.S.C. § 109, Historical Note).

Importation to the United States of this software, which is manufactured and licensed for exclusive use abroad, plainly violates 17 U.S.C. § 602(a).  That the Surplus Computers Defendants may have obtained most (or even all) of this software from suppliers in the United States does not nullify their liability under Section 602(a) of the Copyright Act.  *See Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477, 482 (9th Cir. 1994) ("[T]he purchaser of illegally imported copies has no more authority to distribute copies than does the original importer.").

If Mr. Mak attempts to assert a First Sale Defense (which he cannot because the Microsoft software at issue here is licensed and not sold, as described above), that defense will not shield his distribution in the United States of Microsoft Student Media software from abroad.  The First Sale Defense simply does not apply to copyrighted works manufactured abroad, intended for distribution abroad, and imported into the United States without the copyright owner's authorization, even if the copyrighted works were "sold."  *See Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245, 1253-55 (S.D. Fla. 2006); *Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477, 481-82 (9th Cir. 1994); *BMG Music v. Perez*, 952 F.2d 318, 319 (9th Cir. 1991); *Columbia Broadcasting System, Inc. v. Scorpio Music Distribs., Inc.*, 569 F. Supp. 47, 49-50 (E.D. Pa. 1983), *aff'd without opinion*, 738 F.2d 424 (3d Cir. 1984).

*Quality King Distribs., Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135 (1998), does not stand against this authority.  That case, in which the Court held that the first sale defense did apply, involved the importation of copyrighted works that originally had been manufactured *in the United States.  See Quality King*, 523 U.S. at 154 (Ginsburg, J., concurring) ("This case involves a 'round trip' journey, travel of the copies in question from the United States to places abroad, then back again.  I join the Court's opinion recognizing that we do not today resolve cases in which the allegedly infringing imports were manufactured abroad.").

Indeed, a leading commentator has recognized that *Scorpio*, cited above, "probably represented the best construction" of the Copyright Act with respect to 17 U.S.C. § 602(a) and the first sale defense, and therefore the Copyright Act "should still be interpreted to bar the importation of gray market goods that have been manufactured abroad."  2 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 8.12[B][6] (2006); *see also Swatch*, 454 F. Supp. at 1254 (recognizing that under *Quality King*, first sale doctrine applies only to copies first sold in the United States, not those manufactured and first sold abroad).

Nimmer is not the only authority to have reached this conclusion.  Federal courts have determined that post-*Quality King* the First Sale Defense remains inapplicable to copyrighted works manufactured and sold abroad.  In *Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245 (S.D. Fla. 2006), Swatch sued New City, an unauthorized importer of copyrighted Swatch watches, for violation of 17 U.S.C. § 602(a).  Just as Microsoft anticipates Mr. Mak will assert here, New City argued that the First Sale Defense barred Swatch's unauthorized importation claim.  The *Swatch* Court found that New City's argument was based on a misreading of *Quality King*:

> § 109(a) [the First Sale Defense] only protects resales of works "lawfully made under this title," which means copyrighted works legally made and sold in the United States. . . .  Thus, in *Quality King*, § 109(a) protected the unauthorized importation of copyrighted goods imported because the goods were made and first sold in the United States.  Had the goods not been manufactured domestically, § 109(a) would not have applied.

*Swatch*, 454 F. Supp. 2d at 1254 (citation omitted).  Because the Swatch watches were manufactured and first sold abroad, the court found that New City's importation of those watches violated Swatch's right to prevent their importation under Section 602(a) of the Copyright Act.  *Id.* at 1254-55; *see also UMG Recordings, Inc. v. Norwalk Distribs., Inc.*, 2003 WL 22722410, at *3-*4 (C.D. Cal. 2003) (rejecting First Sale Defense to 17 U.S.C. § 602(a) claim for works manufactured abroad).  In short, "[t]he first sale doctrine in 17 U.S.C. § 109(a) does not . . . provide a defense to infringement under 17 U.S.C. § 602(a) for goods manufactured abroad."  *BMG Music v. Perez*, 952 F.2d 318, 319 (9th Cir. 1991).

Indeed, in similar cases against other distributors and importers of Microsoft Student Media software manufactured and licensed for use abroad, federal courts have found that such conducts violates 17 U.S.C. § 602(a).[12]

**C.    Mr. Mak Is Individually Liable.**

**1.    Mr. Mak Is Directly Liable.**

An individual who participates in copyright infringement in this manner is personally liable for such infringement.  *See, e.g.*, *Playboy Enters., Inc. v. Starware Publ'g Corp.*, 900 F. Supp. 438, 441-42 (S.D. Fla. 1995).  Moreover, "[i]t is well established that a corporate officer will be liable as a joint tortfeasor with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement."  *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F. Supp. 629, 633 (D.N.H. 1986); *see also Foreverendeavor Music, Inc. v. S.M.B., Inc.*, 701 F. Supp. 791, 793-94 (W.D. Wash. 1988) (finding individual liable for copyright infringement taking place at restaurant where he was the president of the corporation that owned the restaurant, where he and members of his immediate family were owners of the corporation, and where he was responsible for management of restaurant).

The evidence here is overwhelming and uncontroverted that Mr. Mak personally participated in the Surplus Computers Defendants' infringing conduct, and is therefore personally liable for that infringement.  Mr. Mak personally arranged Surplus Computers' acquisition of Microsoft Student Media software.  Mak Dep. Tr. 100:8-10, 118:15-17. Numerous of Surplus Computers' purchase orders, including purchase orders for Microsoft Student Media software, list "MM" as the buyer, which Mr. Mak testified refers to him. 131:23-132:6; 138:23-139:3.  Additionally, Mr. Mak's signature is present on numerous purchase orders, including purchase orders for Microsoft Student Media software.  *See* Mak Dep. Tr. at 134:19-22 & Ex. 4 at 349, Mak Dep. Tr. at 138:18-20 & Ex. 4 at 353, Mak Dep. Tr. at 142:11-13 & Ex. 4 at 358, Mak Dep. Tr. at 143:23-24 & Ex. 4 at 363, Mak Dep. Tr. at

---

[12] *See supra* note 7.

147:10-12 & Ex. 4 at 619; Mak Dep. Tr. at 150:6-8 & Ex. 4 at 175, Mak Dep. Tr.at 155:16-19 & Ex. 4 at 211, Mak Dep. Tr. at 155:20-22 & Ex. 4 at 227, Mak Dep. Tr. at 155:23-156:1 & Ex. 4 at 139; *see also* Johnson Decl. ¶ 3.  Finally, Mak directed that Microsoft software, including Student Media software, be offered for sale on the Surplus Computers Defendants' website.  Mak Dep. Tr. at 85:6-22.

Mr. Mak could not be more directly involved in the infringement of Microsoft's copyrights described in this memorandum and the supporting declarations.  On this record, he should be found directly liable for copyright infringement.

### 2.    Mr. Mak Is Contributorily And Vicariously Liable.

An individual may be vicariously liable for copyright infringement if he had the right and ability to supervise the infringing activity and also had a direct financial interest in such activities.  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996).  Additionally, "[o]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer."  *Fonovisa*, 76 F.3d at 264 (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).  On the facts established here, even if the Court concludes that Mr. Mak is not directly liable for copyright infringement (which the undisputed facts demonstrate he is), Mr. Mak is plainly both contributorily and vicariously liable for Surplus Computers' copyright infringement.

As described above, Mr. Mak himself acquired Microsoft Student Media software for Surplus Computers and directed that it be offered for sale on the Surplus Computers website. *See* Section VI.C.1, *supra*.  Moreover, Mr. Mak was aware of the licensing restrictions on this software, yet actively participated in and encouraged its distribution without even attempting to qualify customers as licensed to use this special educational program software.  Mak Dep. Tr. 96:12-18, 98:7-16.  Mak is therefore contributorily liable for Surplus Computers' infringement.  *See Fonovisa*, 76 F.3d at 264.

Mr. Mak is also vicariously liable.  He had the ability to control the activities of *all* of Intrax's employees.  Mak Dep. Tr. at 63:13-21. 66:4-7, 67:16-18, 69:5-9, 71:21-25, 73:12-16, 74:12-16, 77:17-19, 78:20-24, 80:2-4, 82:5-9.  As President and one of two board members, he had the ability to direct Surplus Computers' business, and indeed did direct that business. *Id.* at 60:1-5, 60:25-61:2.  Mr. Mak controlled the content of the Surplus Computers website, and directed that Microsoft software, including Student Media, be offered for sale on it.  *Id.* at 82:1-11, 84:25-85:5, 85:6-22.  As 70% owner of Intrax, Mak also had a direct financial interest in Intrax's distribution of Microsoft Student Media software.  *Id.* at 58:7-9.  Indeed, Mr. Mak testified that if Intrax made more money, he would make more money.  *Id.* at 157:2-5.  His earnings were tied to Intrax's financial performance.  *Id.* at 158:21-24.  And as one of two members of the Board of Directors (the other being his brother), Mr. Mak determined his own award of bonuses.  *Id.* at 158:25-159:7, 159:14-16.  Mr. Mak is plainly vicariously liable for Surplus Computers' infringement.  *Fonovisa*, 76 F.3d at 262.

**D.     Microsoft Is Entitled To A Permanent Injunction.**

"When a copyright plaintiff has established a threat of continuing infringement, he is entitled to an injunction."  *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994); *see also Arista Records LLC v. Ibanez*, 2008 WL 65397 at *2 (S.D. Cal. Jan. 4, 2008) (showing of copyright infringement liability and the threat of future violations is sufficient to warrant a permanent injunction).  "Generally, it would appear to be an abuse of discretion to deny a permanent injunction where liability has been established and there is a threat of continuing infringement."  *Walt Disney Co. v. Powell*, 897 F.2d 565, 567-68 (D.C. Cir. 1990).  Moreover, because Mr. Mak's infringement of Microsoft's rights is beyond dispute, Microsoft is justified in inferring a threat of future harm.  *See, e.g.*, *id.* at 568 (defendant argued that he voluntarily ceased infringement, but trial court was justified in finding that defendant's reformation resulted from risk of legal exposure and it was not unlikely that defendant would attempt to infringe plaintiff's copyrights in the future).  This is particularly true where, as here, Mr. Mak previously has been warned by Microsoft regarding his and his company's

infringing distribution of Microsoft products, but nonetheless continued his infringing activities.

A permanent injunction prohibiting further infringement will protect Microsoft's intellectual property rights without causing Mr. Mak any harm.  And, as in *Columbia Pictures Indus., Inc. v. T & F Enters. Inc.*, 68 F. Supp. 2d 833 (E.D. Mich. 1999), "given the magnitude of Defendants' infringing activities and the relative ease with which such infringement can be perpetrated," it is appropriate to infer a substantial threat of ongoing harm exists, and to grant a permanent injunction.  68 F. Supp. 2d at 841.  Accordingly, Microsoft asks the Court to enter the accompanying proposed permanent injunction to prevent any future violation of Microsoft's copyrights.

## V. CONCLUSION

Mr. Mak personally participated in and/or directed the trafficking and distribution of Microsoft Student Media software that was manufactured abroad for exclusive use and distribution by educational users abroad.  These activities constitute copyright infringement in violation of 17 U.S.C. § 501 and in violation of 17 U.S.C. § 602(a).  The Court should grant Microsoft summary judgment in its favor on those claims.

1

2       PERKINS COIE LLP

3       By:____/s/ Esha Bandyopadhyay____
            Esha Bandyopadhyay (Bar No. 212249)
4           bande@perkinscoie.com
        101 Jefferson Drive
5       Menlo Park, California 94025-1114
6       Phone: (650) 838-4300
        Fax: (650) 838-4350

7
        OF COUNSEL:
8

9       YARMUTH WILSDON CALFO PLLC

10      By:____/s/ Jeremy Roller_____
            Scott T. Wilsdon (*pro hac vice*)
11          wilsdon@yarmuth.com
            Jeremy E. Roller (*pro hac vice*)
12          jroller@yarmuth.com
        925 Fourth Avenue, Suite 2500
13      Seattle, Washington 98104
14      Phone: (206) 516-3800
        Fax: (206) 516-3888
15

16      Attorneys for Plaintiff **MICROSOFT
        CORPORATION**
17

18

19

20

21

22

23

24

25

26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2

       I hereby certify that the foregoing document was served upon the following parties, by the means designated below, this 10th day of July, 2008:

3

4

Steven A. Dillick
Law Offices of Steven A. Dillick

5

One Maritime Plaza, Suite 1040
San Francisco, CA  94111

6

Phone: 425-399-8777
Email: sdillick@ix.netcom.com

7

Counsel for Defendants

8

☐ U.S. Mail
☐ FedEx

9

☐ Hand-Delivery
☐ Facsimile

10

☐ Email
☑ ECF Electronic Filing

11

12

13

/s/ *Jeremy E. Roller*
Scott T. Wilsdon (*pro hac vice*)

14

Jeremy E. Roller (*pro hac vice*)
YARMUTH WILSDON CALFO PLLC

15

16

Attorneys for Plaintiff **MICROSOFT CORPORATION**

17

18

19

20

21

22

23

24

25

26

27

28

MICROSOFTS NOTICE AND MOTION FOR SUMMARY
JUDGMENT; MEMO. OF POINTS AND AUTHORITIES
NO. 07-CV-01840 - 21