Esha Bandyopadhyay (Bar No. 212249)
bande@perkinscoie.com
Perkins Coie LLP
101 Jefferson Drive
Menlo Park, California 94025-1114
Phone: (650) 838-4300
Fax: (650) 838-4350

Scott T. Wilsdon (*pro hac vice*)
wilson@yarmuth.com
Jeremy E. Roller (*pro hac vice*)
jroller@yarmuth.com
Yarmuth Wilsdon Calfo PLLC
925 Fourth Avenue, Suite 2500
Seattle, Washington 98104
Phone: (206) 516-3800
Fax: (206) 516-3888

Attorneys for Plaintiff
MICROSOFT CORPORATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>INTRAX GROUP, INC., d/b/a, SURPLUS COMPUTERS, a California corporation; MICHAEL MAK, an individual; and JOHN DOES 1-5,<br><br>Defendants. | No. 07-CV-01840-CW<br><br>PLAINTIFF MICROSOFT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT<br><br>**Date:** September 11, 2008<br>**Time**: 2:00 p.m.<br>**Before:** Hon. Claudia Wilken<br>**Location:** Courtroom 2, 4th Floor |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 1

    A.    Mr. Mak Failed To Controvert Any Facts. ........................................................ 1

    B.    Mr. Mak Is Liable For Copyright Infringement. ............................................... 2

        1.    Mr. Mak Ignores His Burden To Establish A "First Sale." ................... 2

        2.    Microsoft Student Media Software Is Distributed By License, Not Sale. .................................................................................................. 2

        3.    Mr. Mak's "Private Performance" Argument Is A Red Herring. ........... 7

    C.    Mr. Mak Is Liable For Violation Of 17 U.S.C. § 602(a). ................................. 8

        1.    Whether Mr. Mak Purchased Microsoft Student Media Software From Suppliers In The United States Or Abroad Is Irrelevant. ............... 8

        2.    The First Sale Defense Does Not Apply To 17 U.S.C. § 602(a). ........... 9

    D.    Mr. Mak Is Personally Liable For Copyright Infringement. ........................... 13

III. CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

**Federal Cases**

*Adobe Sys. Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086 (N.D. Cal. 2000) ................... 3, 4
*Adobe Sys. Inc. v. Stargate Software Inc.*, 216 F. Supp. 2d 1051 (N.D. Cal. 2002) ............. 3, 4
*American Int'l Pictures, Inc. v. Foreman*, 576 F.2d 661 (5th Cir. 1978) ................................. 7
*BMG v. Perez*, 952 F.2d 318 (9th Cir. 1991) .......................................................................... 12
*Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044 (9th Cir. 1995) ....................................... 2
*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) ................................. 8, 13
*Lingo Corp. v. Topix, Inc.*, No. 01 Civ. 2863(RMB), 2003 WL 223454 (S.D.N.Y. 2003) ...... 12
*MapInfo Corp. v. Spatial Re-Engineering Consultants*, No. 02-CV-1008 (DRH), 2004 WL 26350 (N.D.N.Y. Jan. 5, 2004) .............................................................................................. 2
*Microsoft Corp. v. Harmony Computers & Elecs., Inc.*, 846 F. Supp. 208 (E.D.N.Y. 1994) ................................................................................................... 2, 3, 7
*Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995 (S.D. Tex. 2000) ........................................................................................................ 2, 3
*Microsoft v. Computer Warehouse*, 83 F. Supp. 2d 256 (D.P.R. 2000) ................................. 8
*Microsoft v. Sellers*, 411 F. Supp. 2d 913 (E.D. Tenn. 2006) ................................................ 8
*Novell, Inc. v. Unicom Sales, Inc.*, No. C-03-2785 MMC, 2004 WL 1839117 (N.D. Cal. Aug. 17, 2004) ..................................................................................... 2, 3
*Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477 (9th Cir. 1994) ................. 9, 12
*Playboy Enters., Inc. v. Starware Publ'g Corp.*, 900 F. Supp. 438 (S.D. Fla. 1995) ............. 13
*Quality King Distribs. Inc. v. L'anza Research Int'l Inc.*, 523 U.S. 135 (1998) ........ 9, 10, 11, 12
*S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235 (9th Cir. 1980) ............................................................................................................. 2
*Softman Prods. Co. v. Adobe Sys., Inc.,* 171 F. Supp. 2d 1075 (C.D. Cal. 2001) ............. 3, 4, 6
*Subafilms, Ltd. v. MGM-Pathe Comm'ns Co.*, 24 F.3d 1088 (9th Cir. 1994) ......................... 12
*Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245 (S.D. Fla. 2006) ...................... 10, 11, 12
*T.B. Harms Co. v. Jem Recs., Inc.*, 655 F. Supp. 1575 (D.N.J. 1987) .................................... 12
*UMG Recs., Inc. v. Disco Azteca Distribs.*, 446 F. Supp. 2d 1164 (E.D. Cal. 2006) ............................................................................................................. 12
*UMG Recs., Inc. v. Norwalk Distribs.*, No. SACV 02-1188 D, 2003 WL 22722410 (C.D. Cal. 2003) ................................................................................................................. 12
*Wall Data Inc. v. Los Angeles County Sheriff's Dep't,* 447 F.3d 769 (9th Cir. 2006) ................................................................................................................. 3

**Federal Statutes**

17 U.S.C. § 106(3) ....................................................................................................................... 8
17 U.S.C. § 109 ........................................................................................................................... 2
17 U.S.C. § 109(a) ................................................................................................................ 11, 12
17 U.S.C. § 117(a) ....................................................................................................................... 8
17 U.S.C. § 501 ........................................................................................................................... 8
17 U.S.C. § 502 ......................................................................................................................... 11
17 U.S.C. § 503 ......................................................................................................................... 11
17 U.S.C. § 505 ......................................................................................................................... 11
17 U.S.C. § 602(a) ................................................................................................................ passim

**Federal Rules**

Fed. R. Civ. P. 56(e)(2) ................................................................................................................. 1

**Other Authorities**

Goldstein, *Copyright* § 16.0 (2d ed. 1998) ................................................................................ 12
Kastenmeier, *Copyright Revisions*, H.R. Rep. No. 94-1476 ...................................................... 11
2 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 8.12[B][6] (2006) ......... 11
W. Patry, *Copyright Law and Practice*, 166-70 (1997) ............................................................ 12

## I. INTRODUCTION

Plaintiff Microsoft Corporation ("Microsoft") submits this Reply in further support of its Motion for Summary Judgment against defendant Michael Mak ("Mr. Mak") (Dkt. # 30). Mr. Mak has failed to demonstrate a genuine issue of material fact on Microsoft's claims against him for copyright infringement and infringing importation of copyrighted works – indeed, he has failed to produce *any* evidence at all. Additionally, Mr. Mak does not deny (because he cannot) that he personally conducted the acts Microsoft alleges constitute copyright infringement or that he had the right and ability to supervise those infringing activities, contributed to them, and had a direct financial interest in them. Instead, Mr. Mak bases his opposition to Microsoft's motion *entirely* on the First Sale Defense – a defense for which he bears the burden of proof.

The only issues that remain for this Court to determine are:

(1) Whether Mr. Mak has established that the Student Media software he distributed was "sold" by Microsoft for purposes of the First Sale Defense, and

(2) Whether the First Sale Defense applies to 17 U.S.C. § 602(a).

A "no" answer to *either* question entitles Microsoft to summary judgment as to liability against Mr. Mak.

For the reasons set forth in Microsoft's Motion and this Reply, Microsoft's Motion for Summary Judgment should be granted.

## II. ARGUMENT

**A.   Mr. Mak Failed To Controvert Any Facts.**

Mr. Mak submitted no evidence to controvert the facts set forth in the Hawkes (Dkt. # 31), Remick (Dkt. # 32), and Deborah Johnson (Dkt. # 33) Declarations filed in support of Microsoft's Motion. Those facts are summarized on pages 3 through 9 of Microsoft's Motion, and are conclusively established in this matter. Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, and opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by

PLAINTIFF MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 07-CV-01840 – Page 1

affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Mr. Mak's bare assertion in his response brief that the Microsoft Student Media software at issue here was "sold" for purposes of the First Sale Defense is no substitute for actual evidence of a "sale." *S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1980) ("[A] party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda.").

**B.   Mr. Mak Is Liable For Copyright Infringement.**

**1.   Mr. Mak Ignores His Burden To Establish A "First Sale."**

Mr. Mak baldly asserts that the Microsoft software at issue here has been "sold" for purposes of the First Sale Defense. Absent from his assertions, however, is a single shred of evidence that this software was sold. *See, e.g.*, Response at 5 (asserting that "evidence points to defendants as owners of the discs," but failing to cite any evidence in support of assertion). Mr. Mak's failure to establish that the software he trafficked was "sold" is fatal to his defense, as he bears the burden of establishing an "actual sale" and other requirements of that defense. *See Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1002 (S.D. Tex. 2000) ("Alleged infringers bear the burden of tracing the chain of title to prove the applicability of the first-sale doctrine."); *Microsoft Corp. v. Harmony Computers & Elecs., Inc.*, 846 F. Supp. 208, 212 (E.D.N.Y. 1994); *MapInfo Corp. v. Spatial Re-Engineering Consultants*, No. 02-CV-1008 (DRH), 2004 WL 26350, at *3 (N.D.N.Y. Jan. 5, 2004); *see also Novell, Inc. v. Unicom Sales, Inc.*, No. C-03-2785 MMC, 2004 WL 1839117, at *8 (N.D. Cal. Aug. 17, 2004) ("Because the defendant 'clearly has the particular knowledge of how possession of the particular copy was acquired,' the defendant has the burden of proving the applicability of the first sale doctrine.") (quoting 17 U.S.C. § 109, Historical Note).

**2.   Microsoft Student Media Software Is Distributed By License, Not Sale.**

Mr. Mak relies heavily upon the decidedly minority *Softman* case for the proposition that copies of software are sold, not licensed. *See* Response at 12-13 (quoting *Softman Prods.*

*Co. v. Adobe Sys., Inc.*, 171 F. Supp. 2d 1075 (C.D. Cal. 2001)). Even if this Court were to apply the analysis set forth in *Softman* – an analysis that departs strikingly from two published opinions in this district and a recent Ninth Circuit opinion[1] – Mr. Mak simply cannot make the argument made by the defendant in *Softman*.

In *Softman*, the defendant had purchased Adobe software from authorized Adobe distributors. *Softman*, 171 F. Supp. 2d at 1085 n.9. Moreover, the evidence in *Softman* established that Adobe distributors paid "full value" for the software and then were permitted to resell the software to other distributors or consumers on the secondary market. *Id.* at 1085. Mr. Mak has come forward with no evidence that he acquired the Microsoft Student Media software at issue here from an authorized Microsoft distributor, or that his supplier acquired that software from an authorized distributor. Mr. Mak has not even attempted to trace the software back to an authorized "sale" by Microsoft, as is his burden. *Software Wholesale Club*, 129 F. Supp. 2d at 1002; *Harmony Computers*, 846 F. Supp. at 212; *Unicom Sales*, No. C-03-2785 MMC, 2004 WL 1839117, at *8 (N.D. Cal.). Indeed, Mr. Mak did not ask his suppliers where they obtained the Student Media software, and he does not know their source(s) for that software. Mak Dep. Tr. (D. Johnson Decl. Ex. 1) at 112:7-19; 114:4-115:9. The mere fact that the Surplus Computers Defendants purchased Student Media software from illicit sources that had obtained it in an unknown manner is insufficient to support a First Sale Defense.

Moreover, in *Softman* there was no evidence of restrictions on distribution that *even come close* to the highly restrictive terms of distribution that have been established for Microsoft Student Media software. Although Adobe had alleged that Softman distributed educational software, the conduct that formed the basis for Adobe's preliminary injunction motion was Softman's "unbundling" of **retail** "Adobe Collection" software, which included

---

[1] *See Adobe Sys. Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1089 (N.D. Cal. 2000); *Adobe Sys. Inc. v. Stargate Software Inc.*, 216 F. Supp. 2d 1051, 1056 (N.D. Cal. 2002); *Wall Data Inc. v. Los Angeles County Sheriff's Dep't*, 447 F.3d 769, 784-85 (9th Cir. 2006).

PLAINTIFF MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 07-CV-01840 – Page 3

several popular titles of Adobe software, into "Collection's" constituent parts and distributing those constituent parts individually. *Id.* at 1080, 1082; *see also Adobe Sys. Inc. v. Stargate Software Inc.*, 216 F. Supp. 2d 1051, 1058 (N.D. Cal. 2002) ("The court in *Softman* dealt with the question of whether the purchaser of a retail collection of Adobe software can re-distribute the collection's constituent parts."). The distribution and licensing agreements at issue in *Softman* did not purport to limit distribution to particular kinds of users (indeed, the software was retail), but rather prohibited distribution of the software without all of its constituent parts. *See, e.g., id.* at 1082 n.6 (noting that EULA permitted redistribution of software, so long as all components are included).

The evidence here demonstrates that Microsoft's distribution of Student Media software is much more restricted than that applicable to the ***retail*** software at issue in *Softman*. Microsoft Student Media software is distributed only through special academic licensing programs at an extraordinary (90%+) discount from regular retail prices. Remick Decl. ¶ 5. Under the license agreements applicable to Student Media software, that software may be distributed only to qualified educational users. *Id.* Academic institutions and students licensed to use Student Media software are restricted from redistributing that software to other than qualified educational users. *Id.* ¶ 6. In the United States, Student Media may be distributed only by Authorized Education Resellers ("AERs"), which neither the Surplus Computers Defendants nor their known suppliers are. *Id.* ¶¶ 6, 10. All Microsoft Student Media, including that the Surplus Computers Defendants sold, is marked with a copyright warning clearly indicating that use of the software is subject to a license agreement and that it may not be resold:

> All use subject to volume license agreement. Do not make illegal copies of this disc. **Not for retail or OEM Distribution. Not for resale.**

*Id.* ¶ 9 & Ex. 1 (emphasis in original). These restrictions show that Microsoft Student Media software is distributed by license, and bears no resemblance to the **retail** "sales" at issue in *Softman*. *See Adobe Sys. Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1091 (N.D. Cal.

1  2000) (observing that the "numerous restrictions imposed by Adobe [on distribution of its
2  educational versions of software] indicate a license rather than a sale because they undeniably
3  interfere with the reseller's ability to further distribute the software"); *Stargate*, 216 F. Supp.
4  at 1054-60.

5  The Microsoft Office 2003 Standard Student Media software the Surplus Computers
6  Defendants distributed to an investigator in April of 2006 is illustrative of the means by which
7  Student Media software is distributed and the significant restrictions Microsoft imposes on its
8  use.[2]  That software was disturbed pursuant to an agreement between Microsoft Ireland
9  Operations Limited, a Microsoft Corporation affiliate, and the Republic of Egypt, specifically
10 the Egyptian Ministry of Education.  Reply Declaration of Tamara Johnson (hereinafter,
11 "Johnson Reply Decl.") ¶ 8 & Ex. 1.  Dr. Salah Amin Elewa, the Technology and
12 Development Center Manager for the Egyptian Ministry of Education, entered the agreement
13 (the "Egyptian Ministry of Education Agreement") on behalf of the Republic of Egypt.  *Id.*

14 Pursuant to the Egyptian Ministry of Education Agreement, the Ministry of Education
15 or its "enrolled affiliates" (qualified educational institutions owned or controlled by the
16 Ministry) may purchase licenses for their use of Microsoft software or for the use of such
17 software by "eligible education customers."  *Id.* ¶ 9.  Eligible education users of this special
18 software are limited to educational institutions and their administrative offices, teaching
19 hospitals or medical training schools, public libraries, public museums, public research
20 establishments, and not-for-profit charitable organizations.  *Id.* & Ex. 1 sch. A.  The use of
21 Microsoft products licensed under the Ministry of Education Agreement is strictly limited to
22 the defined "eligible education customers."  *Id.* ¶ 10 & Ex. 1 § 6.  Additionally, the Ministry

---

[2] Even setting aside the specific evidence relating to the Egyptian Ministry of Education Agreement, Microsoft would be entitled to summary judgment.  Mr. Mak has failed to controvert the evidence set forth by Enoch Remick regarding how Microsoft Student Media software is distributed.  Moreover, Microsoft is indisputably entitled to summary judgment on its 17 U.S.C. § 602(a) claim, as the First Sale Defense does not apply there.  *See* Section II.C.2, *infra*.  The Egyptian Ministry of Education Agreement merely amplifies the evidence conclusively established by Mr. Remick's declaration.  All of the Student Media software distributed by the Surplus Computers Defendants was subject to specific restrictions similar to those set forth in the Egyptian Ministry of Education Agreement.  *See* Johnson Reply Declaration ¶ 12.

PLAINTIFF MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 07-CV-01840 – Page 5

of Education Agreement provides that no ownership rights in any Microsoft product are transferred. *Id.* ¶ 10 & Ex. 1 § 5.

Once an affiliate of the Ministry is enrolled, it receives copies of the products it intends to license and may run as many copies as it wishes during the term of its enrollment, provided that it has ordered sufficient licenses. *Id.* ¶ 11 & Ex. 1 § 2. The per license fee paid by an enrolled affiliate for Office 2003 is approximately $20. *Id.* ¶ 11. One of the ways by which Microsoft provides software to enrolled affiliates is to permit the affiliates to download Microsoft software via the Internet. *Id.* However, particularly in the developing world, Internet bandwidth limitations may make downloading software difficult. *Id.* Microsoft therefore also offers software on Student Media discs. *Id*. Because such Student Media is offered outside the retail distribution chain and only pursuant to a volume license agreement, such as the Ministry of Education Agreement, it is provided to eligible licensees at prices vastly below the cost of fully packaged retail product. *Id.* The Office 2003 Student Media software the Surplus Computers Defendants distributed to an investigator in April of 2006 was initially distributed by an AER pursuant to the Egyptian Ministry of Education Agreement for a negligible $3 per copy, a cost in addition to the per license fee described above. *Id.*

Even under the minority view that software is "sold," as set forth in cases such as *Softman*, the circumstances of Microsoft's distribution of Student Media show that this software is not "sold." Most importantly, this software is not distributed in the retail channel, unlike the software at issue in *Softman*. *See Softman*, 171 F. Supp. 2d at 1080 & n.3. As explained above, distribution of Microsoft Student Media software bears no resemblance to retail "sales." Further, the *Softman* Court found significant that the "purchaser commonly obtains a single copy of the software, with documentation, for a single price, which the purchaser pays at the time of the transaction, and which constitutes the entire payment for the 'license.'" *Id.* at 1085. In contrast, an enrolled affiliate under the Egyptian Ministry of Education Agreement pays a per license fee of approximately $20 for Office 2003. Johnson

Reply Decl. ¶ 11. The Student Media, which is offered as one means by which eligible educational customers can get the software on their computers, is offered for the negligible cost of $3 per unit. Therefore, even under the minority analysis set forth in *Softman*, a court must conclude that Microsoft Student Media is licensed, not sold.

If Microsoft Student Media CDs are stolen or otherwise misappropriated somewhere between their manufacture and delivery to a licensed educational institution, that misappropriation in violation of the licensing agreement does not provide First Sale protection to subsequent "purchasers" like the Surplus Computers Defendants. The Surplus Computers Defendants have identified some of their suppliers of Microsoft Student Media, but have submitted no evidence regarding how or where those suppliers obtained the software. The Surplus Computers Defendants simply cannot acquire rights greater than those granted in the license, and their "purchase" of this software from their suppliers does not strip the software of the licensing requirements. "[E]ven an unwitting purchaser who buys a copy in the secondary market can be held liable for infringement if the copy was not the subject of a first sale by the copyright holder." *American Int'l Pictures, Inc. v. Foreman*, 576 F.2d 661, 664 (5th Cir. 1978); *see also Harmony Computers*, 846 F. Supp. at 213.

All of the evidence before the Court demonstrates that Microsoft Student Media software is distributed by license, not sale. Indeed, Mr. Mak failed to set forth a single shred of evidence to meet his burden of proving a first sale. Microsoft is therefore entitled to summary judgment in its favor on its copyright infringement claim against Mr. Mak.

### 3. Mr. Mak's "Private Performance" Argument Is A Red Herring.

Mr. Mak insists that Microsoft has no right to regulate "private performance" of its copyrighted works and therefore neither Mr. Mak, nor Mr. Mak's purchasers of Microsoft Student Media Software licensed for exclusive distribution to and use by educational users abroad, are liable for copyright infringement. This is a gross misreading of the Copyright Act and, if correct, would sanction the use of even **counterfeit** software, books, movies, or music, so long as the intellectual property on such illegal media (whether CD-ROMs, CDs,

audiotapes or videotapes) is used privately.[3] This simply is not the law. Microsoft has sued Mr. Mak for infringement of its exclusive right of distribution under the Copyright Act.[4] *See* 17 U.S.C. § 106(3) (exclusive right of distribution); 17 U.S.C. § 501 ("Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 . . . , or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright . . . ."). The end users' alleged right to "privately perform" a work does absolutely nothing to relieve Mr. Mak of liability for copyright infringement due to violation of the exclusive right of distribution or 17 U.S.C. § 602(a).

**C.   Mr. Mak Is Liable For Violation Of 17 U.S.C. § 602(a).**

   **1.   Whether Mr. Mak Purchased Microsoft Student Media Software From Suppliers In The United States Or Abroad Is Irrelevant.**

Mr. Mak contends that because he did not import the Student Media software, his distribution of Microsoft software imported to the United States in violation of 17 U.S.C. § 602(a) does not subject him to liability. Undisputed evidence demonstrates that the Student Media software the Surplus Computers distributed in the United States had been manufactured abroad, was licensed for exclusive use abroad, and was not authorized by Microsoft for importation to the United States. Hawkes Decl. ¶¶ 8-10, 12-13; Remick Decl. ¶¶ 7-8. Additionally, neither the Surplus Computers Defendants nor their suppliers were

---

[3] Although Microsoft is not in this case suing the unlicensed end users of Microsoft Student Media software, it is not only their "private performance" of the software programs that would be objectionable. Rather, the reproduction of the code from the Student Media CD-ROMs to the users' computers would constitute unauthorized copying of Microsoft software. *See Microsoft v. Sellers*, 411 F. Supp. 2d 913, 916 (E.D. Tenn. 2006) (installing software on hard drive of a computer without authorization constitutes illegal copying); *Microsoft v. Computer Warehouse*, 83 F. Supp. 2d 256, 262 (D.P.R. 2000) (same). 17 U.S.C. § 117(a) would not shield this unauthorized copying because, for the reasons described above, the Microsoft Student Media software is distributed by license, not sale. Mr. Mak himself implicitly recognizes this as he admits that Microsoft "may include" with its Student Media CD-ROMs "a license to reproduce [the software] onto a computer hard drive." Response at 1. Indeed, Mr. Mak's website's offer for this software stated that the face of the CD-ROM indicated a separate license was required. Mak Dep. Tr. at 94:10-18 & Ex. 3 (MS-NTRX-BR-000013). But the Surplus Computers Defendants did nothing to provide their customers with such a license, or ensure they had such a license. Mak Dep. Tr. at 96:1-18. At a minimum, this establishes Mr. Mak's liability for contributory infringement. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996).

[4] Microsoft has also sued Mr. Mak for violation of 17 U.S.C. § 602(a), a claim to which the First Sale Defense simply does not apply. *See* Section II.C.2, *infra*.

1  authorized by Microsoft to import or distribute in the United States Microsoft software
2  licensed only for distribution outside of this country. Remick Decl. ¶¶ 10-11. That Mr. Mak
3  may not have imported the software does not relieve him of liability under 17 U.S.C. §
4  602(a); all that matters is that he distributed software that was manufactured abroad and
5  imported without authorization from Microsoft. *See Parfums Givenchy, Inc. v. Drug*
6  *Emporium, Inc.*, 38 F.3d 477, 482 (9th Cir. 1994) ("[T]he purchaser of illegally imported
7  copies has no more authority to distribute copies than does the original importer.").

   **2.   The First Sale Defense Does Not Apply To 17 U.S.C. § 602(a).**

9   Mr. Mak insists that under *Quality King*, the First Sale Defense applies to 17 U.S.C. §
10  602(a). But he fails to acknowledge language in that opinion that demonstrates it does not.
11  Moreover, he cites not a single post-*Quality King* case consistent with his position. *See*
12  Response at 13-21. Instead, Mr. Mak relies upon a "parade of horribles" policy argument. *Id.*
13  Mr. Mak ignores the plain meaning of *Quality King* and the numerous post-*Quality King*
14  cases that hold claims under 17 U.S.C. § 602(a) as **not** being subject to the First Sale Defense.

15  In *Quality King Distribs. Inc. v. L'anza Research Int'l Inc.*, 523 U.S. 135 (1998), the
16  plaintiff, L'anza, manufactured personal care products that included a copyrighted label.
17  *Quality King*, 523 U.S. at 138. Those products were manufactured in the United States. *Id.* at
18  138-39. L'anza exported certain of its products from the United States to foreign countries.
19  *Id.* The defendant, Quality King, acquired those products abroad and imported them **back**
20  into the United States. *Id.* L'anza sued Quality King for unauthorized importation under 17
21  U.S.C. § 602(a).

22  The Supreme Court held that a 17 U.S.C. § 602(a) claim for unauthorized **re-**
23  **importation** to the United States of copyrighted works that **had been lawfully made <u>in the</u>**
24  **<u>United States</u> under the Copyright Act** was subject to the First Sale Defense. As Justice
25  Ginsburg's concurrence makes clear, however, the Court did not reach the question of
26  whether that defense applies to importation of works **manufactured abroad**. *Quality King*,
27  523 U.S. at 154 (Ginsburg, J., concurring) ("This case involves a 'round trip' journey, travel

PLAINTIFF MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 07-CV-01840 – Page 9

of the copies in question from the United States to places abroad, then back again. I join the Court's opinion recognizing that we do not today resolve cases in which the allegedly infringing imports were manufactured abroad."). Indeed, the Supreme Court recognized that the First Sale Doctrine "applies only to copies that are 'lawfully made under this title [the Copyright Act].'" *Id.* at 152.

Mr. Mak contends that "under this title" means "'authorized' by the copyright owner or by law." Response at 16. Mr. Mak ignores, however, the plain language of *Quality King* and the numerous post-*Quality King* cases that have found "lawfully made under this title" to mean copyrighted works lawfully manufactured **in the United States**.

The Supreme Court plainly recognized that 17 U.S.C. § 602(a) could apply to "sold" copies of copyrighted works "that were 'lawfully made' not under the United States Copyright Act, but instead, under the law of some other country." *Quality King*, 523 U.S. at 147; *see also Swatch*, 454 F. Supp. 2d at 1254 ("The Court in *Quality King* expressly recognized that the importation protection provision in § 602(a) applies to copies that are not 'lawfully made under the United States Copyright Act, but under the law of some other country.'").

An example provided by the Supreme Court reveals that the First Sale Defense as applied to 17 U.S.C. § 602(a) is limited to those copyrighted works manufactured in the United States. In the Supreme Court's hypothetical example, an author gave exclusive U.S. distribution rights to one publisher and exclusive British distribution rights to another. *Quality King*, 523 U.S. at 148. Both publishers could make lawful, non-counterfeit copies of the copyrighted work. However, only those copies made by the U.S. publisher would be "'**lawfully made under this title**' within the meaning of § 109(a)." *Id.* (emphasis added). "The first sale doctrine would not provide the publisher of the British edition who decided to sell in the American market with a defense to an action under Section 602(a)." *Id.* The distinction between the British and American copies is that the British copies were not lawfully made **under this title**, revealing that "under this title" means "in the United States."

As a leading commentator explains, "[t]his reasoning effectively validates *Scorpio*'s requirement that manufacture of the subject goods take place within the United States in order to take advantage of the first-sale defense." 2 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 8.12[B][6] (2006).

The *Quality King* Court went on to recognize that the "coverage" of the First Sale Doctrine, 17 U.S.C. § 109(a), is far more limited than the "coverage" of 17 U.S.C. § 602(a):

> The argument that the statutory exceptions to § 602(a) are superfluous if the first sale doctrine is applicable rests on the assumption that the coverage of that section is coextensive with the coverage of § 109(a). But since it is, in fact, broader because it encompasses **copies that are not subject to the first sale doctrine – *e.g.*, copies that are lawfully made under the law of another country** – the exceptions do protect the traveler who may have made an insolated purchase of a copy of a work that could not be imported in bulk for purposes of resale.

*Id.* at 148 (emphasis added).

Mr. Mak appears to contend that the **Supreme Court was wrong** in articulating how the First Sale Doctrine would not apply to copyrighted works manufactured outside the United States. The plain language of *Quality King*, *Swatch*, and other authorities not supporting his position, Mr. Mak relies on strained statutory construction arguments and implausible policy arguments.

Mr. Mak points to certain other provisions in the Copyright Act that use the phrase "under this title," and argues that those provisions have no relation to the place of the activity. Microsoft respectfully submits that "under this title" is used repeatedly in the Copyright Act to refer to rights or activities in the United States. For example, Section 105 of the Copyright Act uses the phrase "under this title" to mean that works created by the United States Government are not subject to copyright protection in the United States. But Section 105 does not prevent the United States from obtaining a foreign copyright in another country; rather, it is only meant to restrict the United States from obtaining a copyright in the United States. Kastenmeier, Copyright Revisions, H.R. Rep. No. 94-1476, at 59 (1976). "Under this title" is used consistently in other sections of the Copyright Act to refer to actions, rights or defenses in the United States. *See, e.g.*, 17 U.S.C. §§ 502, 503, 505.

PLAINTIFF MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 07-CV-01840 – Page 11

1    Even if Mr. Mak was correct that "under this title" should mean "'authorized' by the
2    copyright owner or by law," *see* Response at 16, that contention does nothing to expand the
3    reach of the First Sale Doctrine because the Copyright Act does not apply extraterritorially.
4    *See Subafilms, Ltd. v. MGM-Pathe Comm'ns Co.*, 24 F.3d 1088, 1094-95 (9th Cir. 1994); P.
5    Goldstein, *Copyright* § 16.0 at 16:1-16:2 (2d ed. 1998) ("Copyright protection is territorial.
6    The rights granted by the United States Copyright Act extend no farther than the nation's
7    borders.") (quoted in *Quality King*, 523 U.S. at 154 (Ginsburg, J., concurring)).

8    The particular copies of Microsoft Student Media software at issue here simply were
9    not subject to the Copyright Act at the time they were manufactured in Ireland or Germany.
10   *See Quality King*, 523 U.S. at 147-48.  The overwhelming weight of authority stands against
11   Mr. Mak's argument for application of the First Sale Defense to such software, as numerous
12   other courts have found that defense not to apply to copyrighted works manufactured abroad
13   because such works were not "made under this title."  *See, e.g.*, *Swatch S.A. v. New City, Inc.*,
14   454 F. Supp. 2d 1245 (S.D. Fla. 2006); *UMG Recs., Inc. v. Disco Azteca Distribs.*, 446 F.
15   Supp. 2d 1164, 1172-73 (E.D. Cal. 2006); *UMG Recs., Inc. v. Norwalk Distribs.*, No. SACV
16   02-1188 D, 2003 WL 22722410, at *3-*4 (C.D. Cal. 2003); *Lingo Corp. v. Topix, Inc.*, No. 01
17   Civ. 2863(RMB), 2003 WL 223454, at *4 (S.D.N.Y. 2003); *Parfums Givenchy, Inc. v. Drug
18   Emporium, Inc.*, 38 F.3d 477, 481-82 (9th Cir. 1994); *BMG v. Perez*, 952 F.2d 318, 319 (9th
19   Cir. 1991); *T.B. Harms Co. v. Jem Recs., Inc.*, 655 F. Supp. 1575, 1583 (D.N.J. 1987); *see
20   also* W. Patry, *Copyright Law and Practice*, 166-70 (1997) ("lawfully made under this title"
21   in the "first sale" defense, 17 U.S.C. § 109(a), means "lawfully made in the United States")
22   (cited in *Quality King*, 523 U.S. at 154 (Ginsburg, J., concurring)).

23   Indeed, three other United States federal district court judges have found the First Sale
24   Doctrine not to apply to Microsoft Student Media software imported from abroad.  *See*
25   Motion at 10 n.7 & D. Johnson Decl. (Dkt. # 33) Exs. 5-7.  Although lawfully manufactured,
26   the Microsoft Student Media software at issue here was not "lawfully manufactured under this
27   title," 17 U.S.C. § 109(a), and the First Sale Defense therefore simply does not apply.

28

**D.  Mr. Mak Is Personally Liable For Copyright Infringement.**

Mr. Mak failed to controvert the overwhelming evidence of his personal participation in copyright infringement. *See* Motion at 16-17. He is therefore personally liable for that infringement. *See, e.g.*, *Playboy Enters., Inc. v. Starware Publ'g Corp.*, 900 F. Supp. 438, 441-42 (S.D. Fla. 1995). Moreover, Mr. Mak failed to controvert the evidence that he had the right and ability to supervise the infringing activity and also had a direct financial interest in that activity, or that he had knowledge of the infringing activity and materially contributed to it. *See* Motion at 17-18. He is therefore also both vicariously and contributorily liable for the Surplus Computers Defendants' infringement. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262, 264 (9th Cir. 1996).

### III. CONCLUSION

For all of the foregoing reasons, and the reasons set forth in Microsoft's Motion, this court should enter summary judgment finding Mr. Mak liable for (a) violation of Microsoft's exclusive right of distribution of its copyrighted works, and (b) violation of 17 U.S.C. § 602(a) for distribution of Microsoft software imported to the United States without Microsoft authorization.[5] The Court should also permanently enjoin Mr. Mak from any future infringement of Microsoft's copyrights.

//
//
//
//
//
//
//
//

---

[5] As described in Microsoft's Motion, other federal district courts have found that Microsoft is entitled to summary judgment or a preliminary injunction in similar factual circumstances. *See* Motion at 10 n.7 & D. Johnson Decl. (Dkt. # 33) Exs. 5-7.

PLAINTIFF MICROSOFT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 07-CV-01840 – Page 13

1   DATED this 25th day of August, 2008.

PERKINS COIE LLP

By:   /s/ Esha Bandyopadhyay
      Esha Bandyopadhyay (Bar No. 212249)
      bande@perkinscoie.com
101 Jefferson Drive
Menlo Park, California 94025-1114
Phone: (650) 838-4300
Fax: (650) 838-4350

OF COUNSEL:

YARMUTH WILSDON CALFO PLLC

By:   /s/ Jeremy E. Roller
      Scott T. Wilsdon (*pro hac vice*)
      wilsdon@yarmuth.com
      Jeremy E. Roller (*pro hac vice*)
      jroller@yarmuth.com
925 Fourth Avenue, Suite 2500
Seattle, Washington 98104
Phone: (206) 516-3800
Fax: (206) 516-3888

Attorneys for Plaintiff **MICROSOFT CORPORATION**