Audra M. Mori, Bar No. 162850
Katherine M. Dugdale, Bar No. 168014
Jennifer N. Chiarelli, Bar No. 212253
PERKINS COIE LLP
1620 26th Street
Sixth Floor, South Tower
Santa Monica, CA 90404-4013
Phone: (310) 788-9900
Fax:    (310) 788-3399
Email: AMori@perkinscoie.com
        KDugdale@perkinscoie.com
        JChiarelli@perkinscoie.com

Scott T. Wilsdon (*pro hac vice*)
Jeremy E. Roller (*pro hac vice*)
Yarmuth Wilsdon Calfo PLLC
925 Fourth Avenue, Suite 2500
Seattle, Washington 98104
Phone: (206) 516-3800
Fax:    (206) 516-3888
Email: wilson@yarmuth.com
        jroller@yarmuth.com

Attorneys for Plaintiff
MICROSOFT CORPORATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>INTRAX GROUP, INC., d/b/a, SURPLUS COMPUTERS, a California corporation; MICHAEL MAK, an individual; and JOHN DOES 1-5,<br><br>                    Defendants. | No. 07-CV-01840-CW<br><br>MICROSOFT'S NOTICE OF SUPPLEMENTAL AUTHORITY<br><br>**Date:**        September 11, 2008<br>**Time**:        2:00 p.m.<br>**Before:**     Hon. Claudia Wilken<br>**Location:**  Courtroom 2, 4th Floor |

Plaintiff Microsoft Corporation ("Microsoft") herewith provides to the Court supplemental authority that is directly relevant to Microsoft's Motion for Summary Judgment (Dkt. # 30), which is set to be heard on September 11, 2008.

On September 3, 2008, the Ninth Circuit Court of Appeals issued a published opinion in the matter *Omega S.A. v. Costco Wholesale Corp.*, Nos. 07-55368, 07-56206, ___ F.3d ___, 2008 WL 4058640 (9th Cir. Sept. 3, 2008).  A true and correct copy of that opinion is attached hereto as Exhibit 1.

In *Omega*, defendant Costco argued, like defendant Michael Mak ("Mr. Mak") here, that under *Quality King Distribs., Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135 (1998), the First Sale Defense applies to copyrighted works manufactured outside the United States for distribution and use abroad.  The Ninth Circuit rejected Costco's argument and embraced its prior holdings that "17 U.S.C. § 109(a) . . . provide[s] no defense to an infringement action under §§ 106(3) and 602(a) that involves (1) foreign-made, nonpiratical copies of a U.S.-copyrighted work, (2) unless those same copies have already been sold in the United States with the copyright owner's authority." *Omega*, 2008 WL 4058640, at *1.  Indeed, the Ninth Circuit explicitly held "that *Quality King* did not invalidate our general rule that § 109(a) can provide a defense against §§ 106(3) and 602(a) claims only insofar as the claims involve domestically made copies of U.S.-copyrighted works." *Id.* at *3.

The *Omega* Court reasoned that Costco's proposed extension of *Quality King*, which would deem any copy of a copyrighted work protected by a United States copyright as "lawfully made under" the Copyright Act, would result in an impermissible extraterritorial extension of the Copyright Act.  *Id.*  Instead, the *Omega* Court concluded that "copies covered by the phrase 'lawfully made under [Title 17]' in § 109(are) not simply those which are lawfully made by the owner of a U.S. copyright." *Id.* at *6.  "Something more is required . . . that 'something' is the making of the copies *within the United States*, where the Copyright Act applies." *Id.* (emphasis in original).

Just as Mr. Mak argues here, Costco argued that interpreting 17 U.S.C. § 109(a) to require that the copies of the copyrighted work be manufactured in the United States "would provide substantially greater copyright protection to foreign-made copies of U.S. copyrighted works." *Id.* at *6; *see also* Mr. Mak's Response to Motion for Summary Judgment at 13-18

1  (same).  The *Omega* Court dismissed that concern by recognizing that two prior cases –

2  *Parfums Givenchy, Inc v. Drug Emporium, Inc.*, 38 F.3d 477 (9th Cir. 1994), and *Denbicare*

3  *U.S.A. Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143 (9th Cir. 1996) – "resolved this problem by

4  clarifying that parties can raise § 109(a) as a defense in cases involving foreign-made copies

5  so long as a lawful domestic sale has occurred."  *Omega*, 2008 WL 4058640, at *6.

6       The *Omega* Court concluded that "the first sale doctrine is unavailable [to Costco] as a

7  defense to the claims under §§ 106(3) and 602(a) because there is no genuine dispute that

8  Omega manufactured the watches bearing the Omega Globe Design in Switzerland."  *Id.* at

9  *7.  Similarly, here there is no dispute that Microsoft manufactured the software at issue in

10  Ireland or Germany.  Hawkes Decl. (Dkt. # 31) ¶¶ 8-10, 12-13; Remick Decl. (Dkt. # 32) ¶ 8.

11  Moreover, the *Drug Emporium/Denbicare* exception simply does not apply because Microsoft

12  did not authorize the sale of the Microsoft Student Media at issue here in the United States.

13  *See* Hawkes Decl. ¶¶ 8-10, 12-13; Remick Decl. ¶¶ 7-8.

14                                      * * *

15       *Omega* definitively resolves that the First Sale Defense "provide[s] no defense to an

16  infringement action under §§ 106(3) and 602(a) that involves (1) foreign-made, nonpiratical

17  copies of a U.S.-copyrighted work, (2) unless those same copies have already been sold in the

18  United States with the copyright owner's authority."  *Omega*, 2008 WL 4058640, at *1.

19  Because the Student Media software at issue here was made abroad and was not sold in the

20  United States with Microsoft's authority, Microsoft is entitled to summary judgment on both

21  its claims for copyright infringement and infringing importation of copyrighted works.

22

23

24

25

26

27

28

1    Respectfully submitted this 8th day of September, 2008

2

3                                      PERKINS COIE LLP

4                                      By:    /s/ Katherine M. Dugdale
                                              Audra M. Mori (Bar No. 162850)
5                                             AMori@perkinscoie.com
                                              Katherine M. Dugdale (Bar No. 168014)
6                                             KDugdale@perkinscoie.com
                                              Jennifer N. Chiarelli (Bar No. 212253)
7                                             JChiarelli@perkinscoie.com
8                                      1620 26th Street
                                       Sixth Floor, South Tower
9                                      Santa Monica, CA 90404-4013
                                       Phone: (310) 788-9900
10                                     Fax:    (310) 788-3399

11                                     OF COUNSEL:

12                                     YARMUTH WILSDON CALFO PLLC

13

14                                     By:    /s/ Jeremy Roller
                                              Scott T. Wilsdon (*pro hac vice*)
15                                            wilsdon@yarmuth.com
                                              Jeremy E. Roller (*pro hac vice*)
16                                            jroller@yarmuth.com
17                                     925 Fourth Avenue, Suite 2500
                                       Seattle, Washington 98104
18                                     Phone: (206) 516-3800
                                       Fax:    (206) 516-3888

19
                                       Attorneys for Plaintiff **MICROSOFT
20                                     CORPORATION**

21

22

23

24

25

26

27

28   MICROSOFT'S NOTICE OF SUPPLEMENTAL              **YARMUTH WILSDON CALFO PLLC**
     AUTHORITY                                              FOURTH & MADISON
     NO. 07-CV-01840-CW – Page 4                        925 FOURTH AVENUE, SUITE 2500
                                                          SEATTLE WASHINGTON 98104
                                                       T 206.516.3800   F 206.516.3888

1

<u>CERTIFICATE OF SERVICE</u>

2

     I hereby certify that the foregoing document was served upon the following parties, by the means designated below, this 8th day of September, 2008:

3

4

Steven A. Dillick
Law Offices of Steven A. Dillick

5

One Maritime Plaza, Suite 1040
San Francisco, CA  94111

6

Phone: 425-399-8777
Email: sdillick@ix.netcom.com

7

Counsel for Defendants

8

☐ U.S. Mail
☐ FedEx

9

☐ Hand-Delivery
☐ Facsimile

10

☐ Email
☑ ECF Electronic Filing

11

12

                          /s/ *Jeremy E. Roller*
                          Scott T. Wilsdon (*pro hac vice*)

13

                          Jeremy E. Roller (*pro hac vice*)
                          YARMUTH WILSDON CALFO PLLC

14

15

                          Attorneys for Plaintiff **MICROSOFT CORPORATION**

16

17

18

19

20

21

22

23

24

25

26

27

28

Westlaw.

--- F.3d ----                                                                                    Page 1
--- F.3d ----, 2008 WL 4058640 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 11,685

Omega S.A. v. Costco Wholesale Corp.
C.A.9 (Cal.),2008.

United States Court of Appeals,Ninth Circuit.
OMEGA S.A., Plaintiff-Appellant,
v.
COSTCO WHOLESALE CORPORATION,
Defendant-Appellee.
**Nos. 07-55368, 07-56206.**

Argued and Submitted July 15, 2008.
Filed Sept. 3, 2008.

**Background:** Copyright owner filed action against retailer alleging infringing distribution and importation for unauthorized sale of authentic, imported watches that bore design registered in Copyright Office. The United States District Court for the Central District of California, Terry J. Hatter, J., granted summary judgment for retailer. Owner appealed.

**Holding:** The Court of Appeals, Milan D. Smith, Jr., Circuit Judge, held that first sale doctrine was unavailable as defense to claims of infringing distribution and importation for unauthorized sale of authentic, imported watches that bore design registered in Copyright Office.

Reversed and remanded.

**[1] Copyrights and Intellectual Property 99 🔑0**

99 Copyrights and Intellectual Property
First sale doctrine was unavailable as defense to claims of infringing distribution and importation for unauthorized sale of authentic, imported watches that bore design registered in Copyright Office; although design had been copyrighted in United States, watches that bore design had been manufactured and first sold overseas. 17 U.S.C.A. §§ 106(3), 109(a), 602(a).

**[2] Copyrights and Intellectual Property 99 🔑0**

99 Copyrights and Intellectual Property

The first sale doctrine can provide a defense against distribution and importation claims only insofar as the claims involve domestically made copies of United States copyrighted works. 17 U.S.C.A. §§ 106(3), 109(a), 602(a).

**[3] Federal Courts 170B 🔑0**

170B Federal Courts
Lower courts are bound not only by the holdings of higher courts' decisions but also by their mode of analysis.

**[4] Copyrights and Intellectual Property 99 🔑0**

99 Copyrights and Intellectual Property
When deciding whether to award fees under the Copyright Act, a district court should consider the degree of success obtained, frivolousness, motivation, objective unreasonableness both in the factual and legal arguments in the case, and the need in particular circumstances to advance considerations of compensation and deterrence. 17 U.S.C.A. § 505.

Barry R. Levy and Andrea M. Gauthier, Horvitz & Levy LLP, Encino, CA; David S. Richman and Kenneth E. Johnson, Theodora Oringher Miller & Richman, P.C., Los Angeles, CA; and Matthew C. Wagner, Jess M. Collen, Thomas P. Gulick, Collen IP, Ossining, NY, for the plaintiff-appellant.
Aaron J. Moss and Norman H. Levine, Greenberg Glusker Fields Claman & Machtinger LLP, Los Angeles, CA, for the defendant-appellee.
W. Stephen Cannon and Seth D. Greenstein, Constantine Cannon LLP, Washington, D.C., for the amici curiae.

Appeal from the United States District Court for the Central District of California; Terry J. Hatter, District Judge, Presiding. D.C. No. CV-04-05443-TJH.

Before BARRY G. SILVERMAN, JOHNNIE B. RAWLINSON, and MILAN D. SMITH, JR., Circuit Judges.

**OPINION**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----                                                                    Page 2
--- F.3d ----, 2008 WL 4058640 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 11,685

MILAN D. SMITH, JR., Circuit Judge:

**\*1** In this opinion, we address whether the Supreme Court's decision in *Quality King Distributors, Inc. v. L'anza Research International, Inc.,* 523 U.S. 135, 118 S.Ct. 1125, 140 L.Ed.2d 254 (1998), requires us to overrule our precedents that allow a defendant in a copyright infringement action to claim the "first sale doctrine" of 17 U.S.C. § 109(a) as a defense only where the disputed copies of a copyrighted work were either made or previously sold in the United States with the authority of the copyright owner. Plaintiff-Appellant Omega S.A. (Omega) filed claims for infringing distribution and importation under 17 U.S.C. §§ 106(3) and 602(a) in response to Defendant-Appellee Costco Wholesale Corporation's (Costco) unauthorized sale of authentic, imported Omega watches bearing a design registered in the U.S. Copyright Office. The district court granted summary judgment to Costco on the basis of the first sale doctrine, and awarded attorney's fees. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

This circuit has construed 17 U.S.C. § 109(a) to provide no defense to an infringement action under §§ 106(3) and 602(a) that involves (1) foreign-made, nonpiratical copies of a U.S.-copyrighted work, (2) unless those same copies have already been sold in the United States with the copyright owner's authority. We hold that the first portion of this construction is not "clearly irreconcilable" with *Quality King,* and that it remains the law of this circuit. *See Miller v. Gammie,* 335 F.3d 889, 900 (9th Cir.2003) (en banc). Because there is no genuine dispute that Omega made the copies of the disputed design in Switzerland, and that Costco sold them in the United States without Omega's authority, the first sale doctrine is unavailable as a defense to Omega's claims.

## I.   FACTUAL   AND   PROCEDURAL BACKGROUND

The facts are not disputed. Omega manufactures watches in Switzerland and sells them globally through a network of authorized distributors and retailers. Engraved on the underside of the watches is a U.S.-copyrighted "Omega Globe Design."

Costco obtained watches bearing the copyrighted

design from the "gray market" [FN1] in the following manner: Omega first sold the watches to authorized distributors overseas. Unidentified third parties eventually purchased the watches and sold them to ENE Limited, a New York company, which in turn sold them to Costco. Costco then sold the watches to consumers in California. Although Omega authorized the initial foreign sale of the watches, it did not authorize their importation into the United States or the sales made by Costco.

Omega filed a lawsuit alleging that Costco's acquisition and sale of the watches constitute copyright infringement under 17 U.S.C. §§ 106(3) and 602(a), and subsequently moved for summary judgment. Costco filed a cross-motion on the basis of 17 U.S.C. § 109(a), arguing that, under the first sale doctrine, Omega's initial foreign sale of the watches precludes claims of infringing distribution and importation in connection with the subsequent, unauthorized sales. The district court ruled without explanation in favor of Costco on both motions. The court also awarded $373,003.80 in attorney's fees to Costco under 17 U.S.C. § 505. This appeal followed.

## II. STANDARD OF REVIEW

**\*2** We review de novo a district court's grant of summary judgment under Federal Rule of Civil Procedure 56. *Buono v.Norton,* 371 F.3d 543, 545 (9th Cir.2004).Rule 56(c) provides that summary judgment is warranted when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."We review a district court's award of attorney's fees under 17 U.S.C. § 505 for an abuse of discretion. *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.,* 259 F.3d 1186, 1197 (9th Cir.2001).

## III. DISCUSSION

[1] The viability of Omega's infringement claims hinges on the relationship among three sections of the Copyright Act of 1976: 17 U .S.C. §§ 106(3), 109(a), and 602(a). In relevant part, § 602(a) reads:

Importation into the United States, without the authority of the owner of copyright under this title, of copies ... of a work that have been acquired

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

outside the United States is an infringement of the exclusive right to distribute copies ... under section 106, actionable under section 501. FN2

Section 106(3) states:

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights ... to distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.

Finally, § 109(a) provides:

Notwithstanding the provisions of section 106(3), the owner of a particular copy ... lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy....

This last section codifies the so-called "first sale doctrine," which holds that "[o]nce [a] copyright owner consents to the sale of particular copies of his work, he may not thereafter exercise the distribution right with respect to those copies." 2-8 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 8.12(B)(1), at 8-156 (1978 ed.).

The text of the Copyright Act establishes by syllogism that the first sale doctrine of § 109(a) limits § 602(a): First, given that § 106(3) is "subject to sections 107 through 122" and § 109 falls within the designated portion of the Code, § 109(a) limits the exclusive distribution right in § 106(3). Second, infringing importation under § 602(a) is merely a subcategory of "infringement of the exclusive right to distribute copies ... under section 106," so conduct that does not violate § 106(3) cannot constitute infringement under § 602(a). Finally, because conduct covered by § 109(a) does not violate § 106(3), and because absent a violation of § 106(3) there cannot be infringement under § 602(a), conduct covered by § 109(a) does not violate § 602(a). In short, infringement does not occur under § 106(3) or § 602(a) where "the owner of a particular copy ... lawfully made under this title" imports and sells that copy without the authority of the copyright owner. 17 U.S.C. § 109(a); FN3 see Quality King Distribs., Inc. v. L'anza Res. Int'l, Inc., 523 U.S. 135, 144-45, 118 S.Ct. 1125, 140 L.Ed.2d 254 (1998) (adopting this interpretation).

*3 [2] Omega concedes that § 109(a) generally limits §§ 106(3) and 602(a), but contends that § 109(a) does not apply in this case. Specifically, Omega argues that § 109(a) provides no defense to the infringement claims because, although the Omega Globe Design was copyrighted in the United States, the watches bearing the design were manufactured and first sold overseas. Omega claims that the copies of the design were not "lawfully made under [Title 17]" in these circumstances. 17 U.S.C. § 109(a). Costco responds that although Omega's position is correct under BMG Music v. Perez, 952 F.2d 318 (9th Cir.1991), Parfums Givenchy, Inc. v. Drug Emporium, Inc., 38 F.3d 477 (9th Cir.1994), and Denbicare U.S.A. Inc. v. Toys "R" Us, Inc., 84 F.3d 1143 (9th Cir.1996), the Supreme Court effectively overruled those cases in Quality King, 523 U.S. 135, 118 S.Ct. 1125, 140 L.Ed.2d 254. For the reasons set forth below, we hold that Quality King did not invalidate our general rule that § 109(a) can provide a defense against §§ 106(3) and 602(a) claims only insofar as the claims involve domestically made copies of U.S.-copyrighted works. Because we also conclude that the exception to that rule does not apply, § 109(a) provides no defense in this case.

**A. Current Rule in the Circuit**

Omega's position was clearly correct under pre-Quality King Ninth Circuit precedent. This court has twice held on indistinguishable facts that § 109(a) provides no defense against a claim under § 602(a). In BMG Music, the defendant purchased copies of the plaintiffs' U.S.-copyrighted, foreign-manufactured sound recordings, imported them into the United States without the plaintiffs' authorization, and then sold them to the public. 952 F.2d at 319. Following CBS v. Scorpio Music Distributors, 569 F.Supp. 47, 49 (E.D.Pa.1983), aff'd without opinion, 738 F.2d 424 (3d Cir.1984), we held that § 109(a) provided no defense against a claim under § 602(a) in the circumstances because the phrase "lawfully made under this title" in § 109(a) "grants first sale protection only to copies legally made and sold in the United States," and the copies at issue were made and first sold abroad. 952 F.2d at 319. The rationale for this interpretation was twofold: First, a contrary interpretation would impermissibly extend the Copyright Act extraterritorially. Id. (citing Scorpio, 569 F.Supp. at 49). Second, the application of § 109(a) after foreign sales would " 'render § 602

virtually meaningless' " as a tool against the unauthorized importation of nonpiratical copies because importation is almost always preceded by at least one lawful foreign sale that will have exhausted the distribution right on which § 602(a) is premised. *Id.* at 319-20 (quoting *Scorpio,* 569 F.Supp. at 49).

*Drug Emporium,* 38 F.3d 477, followed *BMG Music* by holding on similar material facts that § 109(a) provided no defense. However, we criticized the prior interpretation of § 109(a)'s key phrase-"lawfully made under this title." By permitting the first sale defense only against claims involving copies that are "*legally made and sold in the United States,*"*BMG Music* appeared to give greater copyright protection to foreign-made copies than to their domestically made counterparts. *See*38 F.3d at 482 n. 8. We found that "such a result would be untenable, and that nothing in the legislative history or text of § 602 supports such an interpretation."*Id.; see also* 2 Paul Goldstein, Goldstein on Copyright § 7.6.1, at 142 (3d ed.2007) (criticizing the approach in *BMG Music* and *Scorpio* ). We therefore created an exception to *BMG Music,* concluding that § 109(a) can apply to copies not made in the United States so long as an authorized first sale occurs here. *Drug Emporium,* 38 F.3d at 481.

**\*4** *Denbicare,* which involved copies made in Hong Kong and voluntarily sold by the U.S. copyright owner within the United States, applied the exception created by *Drug Emporium. Denbicare,* 84 F.3d at 1145-46. The copyright owner sued under §§ 106(3) and 602(a) after the defendant purchased the copies and resold them without permission, but we rejected the claims: The defendant was not liable for infringing importation under § 602(a) because the disputed copies were imported by third parties prior to the defendant's purchase and resale. *Id.* at 1149.The defendant also was not liable under § 106(3) because, in light of § 109(a) and *Drug Emporium,* the copyright owner's voluntary sale of the copies within the United States exhausted the exclusive right of distribution. *Id.* at 1149-50.

Under these cases, Costco would not be entitled to summary judgment on the basis of § 109(a). The statute would not apply because Omega made copies of the Omega Globe Design in Switzerland and Costco sold the copies without Omega's authority in the United States. The district court's unexplained grant of summary judgment on the basis of § 109(a) was at odds with *BMG Music, Drug Emporium,* and *Denbicare.*[FN4]

**B. The Impact of Quality King**

We next address the degree to which the Supreme Court's decision in *Quality King* invalidates this circuit's construction of § 109(a). This panel may overrule *BMG Music, Drug Emporium,* and *Denbicare* if *Quality King*"undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."*Miller,* 335 F.3d at 900.

1.

It is clear that *Quality King* did not directly overrule *BMG Music, Drug Emporium,* and *Denbicare. Quality King* involved "round trip" importation: a product with a U.S.-copyrighted label was manufactured inside the United States, exported to an authorized foreign distributor, sold to unidentified third parties overseas, shipped back into the United States without the copyright owner's permission, and then sold in California by unauthorized retailers. 523 U.S. at 138-39. The Court held that § 109(a) can provide a defense to an action under § 602(a) in this context. *Id.* at 144-52.However, because the facts involved only domestically manufactured copies, the Court did not address the effect of § 109(a) on claims involving unauthorized importation of copies made abroad. *See id.* at 154 (Ginsburg, J., concurring) ("[W]e do not today resolve cases in which the allegedly infringing imports were manufactured abroad."). Moreover, the Court never discussed the scope of § 109(a) or defined what "lawfully made under this title" means.

2.

[3] We next consider whether the reasoning [FN5] of *Quality King* is clearly irreconcilable with our general rule that § 109(a) is limited to copies "legally made ... in the United States."*BMG Music,* 952 F.2d at 319;*see also Denbicare,* 84 F.3d at 1150. The basis for that rule was our concern that applying § 109(a) to foreign-made copies would violate the presumption against the extraterritorial application of U.S. law. *BMG Music,* 952 F.2d at 319 (citing *Scorpio,* 569 F.Supp. at 49);*cf. Subafilms, Ltd. v.*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----

--- F.3d ----, 2008 WL 4058640 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 11,685

Page 5

*MGM-Pathe Commc'ns Co.,* 24 F.3d 1088, 1093-98 (9th Cir.1994) (en banc) (describing the "undisputed axiom" that United States copyright law has no extraterritorial application).*Quality King* dismissed a similar concern that the triggering of § 109(a) by *foreign sales* would require an invalid extraterritorial application of the Copyright Act, explaining that merely meeting the occurrence of such sales "does not require the extraterritorial application of the Act any more than § 602(a)'s 'acquired abroad' language does." 523 U.S. at 145 n. 14. Costco contends that this explanation is irreconcilable with our interpretation of § 109(a) in *BMG Music*.

*5 We reject Costco's contention and hold that the Supreme Court's brief discussion on extraterritoriality is not "clearly irreconcilable" with our general limitation of § 109(a) to copies that are lawfully made in the United States. *Miller,* 335 F.3d at 900. The common understanding of the presumption against extraterritoriality is that a U.S. statute "appl[ies] only to conduct occurring within, or having effect within, the territory of the United States, unless the contrary is clearly indicated by the statute."Restatement (Second) of Foreign Relations Law of the United States § 38 (1965); *see also EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991). Recognizing the importance of avoiding international conflicts of law in the area of intellectual property, however, we have applied a more robust version of this presumption to the Copyright Act, holding that the Act presumptively does not apply to conduct that occurs abroad even when that conduct produces harmful effects within the United States. *See Subafilms, Ltd.,* 24 F.3d at 1096-98;*see also* William S. Dodge, *Understanding the Presumption Against Extraterritoriality,* 16 Berkeley J. Int'l L. 85, 101 (1998) (characterizing this circuit's approach under the Copyright Act as consistent with *American Banana Co. v. United Fruit Co.,* 213 U.S. 347, 356, 29 S.Ct. 511, 53 L.Ed. 826 (1909), *overruled on other grounds, Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 704-05, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962), which described the presumption as a "general and almost universal rule ... that the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done").

Given this understanding of the presumption, the application of § 109(a) to foreign-made copies would impermissibly apply the Copyright Act extraterritorially in a way that the application of the statute after foreign sales does not. Under the latter application, the statute merely acknowledges the occurrence of a foreign event as a relevant fact. The former application would go much further. To characterize the making of copies overseas as "lawful [ ] ... under [Title 17]" would be to ascribe legality under the Copyright Act to conduct that occurs entirely outside the United States, notwithstanding the absence of a clear expression of congressional intent in favor of extraterritoriality. *See*17 U.S.C. § 109(a); *see also Subafilms, Ltd.,* 24 F.3d at 1096 ("There is no clear expression of congressional intent in either the 1976 Act or other relevant enactments to alter the preexisting extraterritoriality doctrine."). Specifically, it would mean that a copyright owner's foreign manufacturing constitutes lawful reproduction under 17 U.S.C. § 106(1) even though that statute does not clearly provide for extraterritorial application. This is precisely what we proscribed in *Subafilms, see* 24 F.3d at 1098, and *Quality King* provides no basis for rejecting our approach.

*6 Other significant parts of *Quality King's* analysis are also inconsistent with *BMG Music's* limitation of § 109(a) to domestically made copies. The Court found that copies of a work copyrighted under Title 17 are not necessarily "lawfully made under [Title 17]" even when made by the owner of the copyright: The category of copies covered by § 602(a), it was explained, encompasses "copies that were 'lawfully made' not under the United States Copyright Act, but instead, under the law of some other country."523 U.S. at 147. Because § 602(a) extends to such copies, but on its terms permits an infringement action only by the "owner of copyright under [Title 17]," copies of a work can be lawfully made "under the law of some other country," rather than "under[Title 17]," even when the copies are protected by a U.S. copyright. In short, copies covered by the phrase "lawfully made under [Title 17]" in § 109(a) are not simply those which are lawfully made by the owner of a U.S. copyright. Something more is required. To us, that "something" is the making of the copies *within the United States,* where the Copyright Act applies. *See* 2-8 Nimmer on Copyright § 8.12(B)(6)(c), at 8-178.4(6)-(7).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

We also read one of the Court's illustrations to be consistent with this understanding. The Court stated that given

> a publisher of [a] U.S. edition [of a work] and a publisher of [a] British edition of the same work, each such publisher could make lawful copies. If the author of the work gave the exclusive United States distribution rights-enforceable under the Act-to the publisher of the United States edition and the exclusive British distribution rights to the publisher of the British edition, however, *presumably only those made by the publisher of the United States edition would be 'lawfully made under this title' within the meaning of* § 109(a). The first sale doctrine would not provide the publisher of the British edition who decided to sell in the American market with a defense to an action under § 602(a).

523 U.S. at 148 (emphasis added and footnote omitted). Assuming the British edition was made outside the United States,[FN6] this illustration suggests that "lawfully made under this title" refers exclusively to copies of U.S.-copyrighted works that are made domestically. Were it otherwise, the copies made by the British publisher would also fall within the scope of § 109(a).*See* 2-8 Nimmer on Copyright § 8.12(B)(6)(c), at 8-178.4(7).

Finally, in the decision's only direct language on the issue, Justice Ginsburg's concurrence cited a copyright treatise for the proposition that "lawfully made under this title" means "lawfully made in the United States." 523 U.S. at 154 (citing W. Patry, Copyright Law and Practice 166-70 (1997 Supp.)). The majority opinion did not dispute this interpretation, which aligns closely with the one adopted by our circuit. *See BMG Music,* 952 F.2d at 319.

Costco contends that *BMG Music's* limitation of § 109(a) to domestically made copies is inconsistent with the plain language of the statute and its legislative history. This criticism has been made before, including by this court. *See, e.g., Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.,* 832 F.Supp. 1378, 1386-87 (C.D.Cal.1993), *aff'd sub nom.Drug Emporium,* 38 F.3d at 482 n. 8. Perhaps most compelling is the objection that *BMG Music* would provide substantially greater copyright

protection to foreign-made copies of U.S.-copyrighted works. A U.S. copyright owner, for example, would be unable to exercise distribution rights after one lawful, domestic sale of a watch lawfully made in South Dakota but, without the limits imposed by § 109(a), the same owner could seemingly exercise distribution rights after even the tenth sale in the United States of a watch lawfully made in Switzerland. The difference would likely encourage U.S. copyright owners to outsource the manufacturing of copies of their work overseas. *Drug Emporium* and *Denbicare,* however, resolved this problem by clarifying that parties can raise § 109(a) as a defense in cases involving foreign-made copies so long as a lawful domestic sale has occurred. *See Drug Emporium,* 38 F.3d at 481;*Denbicare,* 84 F.3d at 1150. Insofar as Costco contends that § 109(a) should apply to foreign-made copies even in the absence of a lawful domestic sale, the surviving rule from *BMG Music* requires otherwise. *See* 952 F.2d at 319.

**\*7** In summary, our general rule that § 109(a) refers "only to copies legally made ... in the United States," *id.,* is not clearly irreconcilable with *Quality King,* and, therefore, remains binding precedent. Under this rule, the first sale doctrine is unavailable as a defense to the claims under §§ 106(3) and 602(a) because there is no genuine dispute that Omega manufactured the watches bearing the Omega Globe Design in Switzerland. *Id.;*Fed.R.Civ.P. 56(c); *see also Swatch S.A. v. New City, Inc.,* 454 F.Supp.2d 1245, 1253-54 (S.D.Fla.2006) (concluding that *Quality King* is consistent with the interpretation that "lawfully made under this title" means "legally made ... in the United States"); 2 Goldstein on Copyright § 7.6.1, at 143-44 (concluding that *Quality King* "indicates an intention not to disturb lower court holdings that the first sale defense is unavailable to importers who acquire ownership of gray market goods made abroad").

3.

We need not decide whether *Drug Emporium's* and *Denbicare's* exception to the rule in *BMG Music* also survives *Quality King.*There is no genuine dispute that the copies of the Omega Globe Design were sold in the United States without Omega's authority. The exception, therefore, does not apply in this case. *See Denbicare,* 84 F.3d at 1145-46 ("[Section] 109

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 4058640 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 11,685

Page 7

applies to copies made abroad only if the copies have been sold in the United States by the copyright owner or with its authority."). Because the exception does not apply, the question of its continuing viability cannot affect our conclusion that § 109(a) provides no defense to Omega's claims.

**C. Attorney's fees under 17 U.S.C. § 505**

[4] The final issue is whether the district court abused its discretion in awarding attorney's fees to Costco. The Copyright Act provides for an "award [of] a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. In deciding whether to award fees under this statute, a district court should consider "the degree of success obtained; frivolousness; motivation; objective unreasonableness (both in the factual and legal arguments in the case); and the need in particular circumstances to advance considerations of compensation and deterrence." *Columbia Pictures Television, Inc.*, 259 F.3d at 1197.

The district court's award of $373,003.80 in attorney's fees to Costco was an abuse of discretion because neither party has prevailed in this litigation to this point.

REVERSED AND REMANDED.

FN1. " 'Gray-market' goods, or 'parallel imports,' are genuine products possessing a brand name protected by a trademark or copyright. They are typically manufactured abroad, and purchased and imported into the United States by third parties, thereby bypassing the authorized U.S. distribution channels." *Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477, 481 n. 6 (9th Cir.1994). Retailers are able to sell these products at a discount because the gray market arbitrages international discrepancies in manufacturers' pricing systems.

FN2. Section 501(a) provides: "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122, ... or who imports copies ... into the United States in violation of section 602, is an infringer of the copyright...."

FN3. Other parts of § 109 qualify the first sale doctrine of § 109(a), *see generally* 17 U.S.C. § 109, but the parties do not argue that any of those limiting provisions apply.

FN4. *Denbicare's* rejection of a § 602(a) claim due to the defendant's lack of involvement in importation suggests that Omega's claim under § 602(a) is similarly unmeritorious because, like the defendant in *Denbicare*, Costco did not import the disputed copies. *See* 84 F.3d at 1149. However, Costco waived this argument by not raising it in its opening brief. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir.1994) ( "We review only issues which are argued specifically and distinctly in a party's opening brief."). In any event, we must still decide whether § 109(a) provides a defense against Omega's claim under § 106(3).

FN5. "[L]ower courts [are] bound not only by the holdings of higher courts' decisions but also by their 'mode of analysis.' " *Miller*, 335 F.3d at 900 (quoting Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L.Rev. 1175, 1177 (1989)).

FN6. The illustration offers no specific justification for making this assumption over any other regarding the site of manufacture, but *Quality King* cannot be "clearly irreconcilable" with our precedent even if the decision merely *permits* assumptions that are consistent with that precedent. *Miller*, 335 F.3d at 900.

C.A.9 (Cal.),2008.
Omega S.A. v. Costco Wholesale Corp.
--- F.3d ----, 2008 WL 4058640 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 11,685

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.